139 So.2d 166 (1962)
Eve BACON, Appellant,
v.
Lloyd KARR and Margaret P. Karr, His Wife, and Winter Park Publishing Company, a Florida Corporation, Appellees.
No. 2592.
District Court of Appeal of Florida. Second District.
March 21, 1962.
*167 Harold A. Ward, III, Winderweedle, Haines, Hunter & Ward, Winter Park, for appellant.
O.B. McEwan and Maurice M. Paul, Sanders, McEwan, Schwarz & Mims, Orlando, for appellees.
WHITE, Judge.
Appellant Eve Bacon, plaintiff below, is aggrieved by an order dismissing with prejudice her amended complaint in an action by which she sought damages for breach of an employment contract. The defendants were the appellees Lloyd Karr, Margaret P. Karr, his wife, and Winter Park Publishing Company which was the alleged corporate assignee of the contract by which the defendants Karr agreed to employ the plaintiff for three years at $100 per week plus a bonus of 5% of the net profits of the publishing business. The question before us is whether or not the plaintiff pleaded a justiciable case, so the allegations of the amended complaint are accepted as true insofar as they are well pleaded.
On February 5, 1959 plaintiff Eve Bacon and one James O. Hardee owned or controlled the capital stock of Winter Park Sun, Inc., a publishing establishment, and on said date they entered into an agreement with Lloyd Karr and Margaret P. Karr by which the Karrs purchased all the stock of said corporation. The agreement provided that Eve Bacon would not compete with the Karrs nor become associated with any other advertising or publishing media within Orange County and adjoining Florida counties for a period of ten years from April 1, 1959. It was also provided that Eve Bacon could sell literary articles to national magazines and act as local correspondent for a Jacksonville newspaper so long as such activities did not interfere with her duties "as full time employee of the within vendees."
On the same date as the foregoing stock sale agreement, to-wit, February 5, 1959, Eve Bacon as employee and Lloyd and Margaret Karr as employers contracted and agreed as follows:
"THIS AGREEMENT made and entered into this 5th day of February, 1959, by and between Eve Bacon, hereinafter called the Employee and Lloyd Karr & Margaret P. Karr, hereinafter called the Employer, WITNESSETH THAT:
"IT IS MUTUALLY UNDERSTOOD AND AGREED AS FOLLOWS:
"1. The Karrs agree to employ Eve Bacon in the operation of a newspaper in Winter Park, Florida, and individually and personally guarantee the performance *168 hereof by the Employer regardless of the business form or entity of the said newspaper operation, if the said Eve Bacon does and is physically able to perform the services, upon the following terms:
"A. For a period of three years from March 31, 1959.
"B. At a salary of $100.00 per week.
"C. Plus a bonus of 5% of the net profit of the corporation or other business form or entity by which the said newspaper is operated, after computing and deducting all income taxes.
"D. This compensation and employment is based upon the full time efforts and services of Mrs. Bacon who agrees to exert her best efforts on behalf of the business.

"E. Mrs. Bacon agrees to fully cooperate in carrying out all promotions and directions of employers and to give her best advice and suggestions in furthering said business. * * *." (Emphasis added.)
Pursuant to the foregoing arrangement Eve Bacon worked for the defendants from March 31, 1959 to April 22, 1960 when the defendants discharged her and refused to pay her any further salary. In the meantime Lloyd and Margaret Karr had formed the defendant corporation, Winter Park Publishing Company, to which they allegedly assigned their rights and obligations with respect to the services of Eve Bacon. Winter Park Publishing Company continued to employ Eve Bacon and issued to her the $100.00 weekly salary checks until the aforesaid date of April 22, 1960.
Lloyd and Margaret Karr were attorneys licensed to practice law in Iowa and the agreements of February 5, 1959 were proposed and drafted by said defendants. In concluding the allegations of her complaint, Eve Bacon asserted that while working for the defendants she refused to consider other offers of employment. She averred that she performed all the stipulations on her part and that she continued ready, able and willing to perform as contemplated by agreement of the parties.
The defendants moved to dismiss the complaint on the ground that it failed to state a cause of action. They also moved to strike Winter Park Publishing Company as a defendant on the ground that said corporation was not a proper party. The trial court granted both motions by order finding that the two agreements appended as exhibits to the complaint were not to be considered in pari materia and that the employment agreement was legally insufficient and unenforceable. The plaintiff Eve Bacon has appealed, raising the following points which are covered by the assignments of error: The trial court erred (1) in holding the employment agreement insufficient and unenforceable, (2) in holding that the stock sale and employment agreements were not to be treated in pari materia and (3) in dismissing Winter Park Publishing Company as a defendant.
The defendant-appellees advance the argument that the employment agreement lacked essential mutuality of obligation in that by use of the words "* * * if the said Eve Bacon does and is physically able to perform the services. * * *", the contract did not require the plaintiff to do anything. The plaintiff-appellant contends on the other hand that mutuality of obligation is clearly disclosed by a contextual analysis of the employment agreement which moreover, according to the second point on appeal, should have been considered in pari materia with the stock sale agreement of the same date. The views of this court are in substantial accord with those of the appellant.
The stock sale agreement contemplated liquidation of the existing publishing establishment in furtherance of the plan of the Karrs to form a new corporation to supplant the old Winter Park Sun, Inc. The *169 restrictive covenants limiting the activities of Eve Bacon and James Hardee were parts of the overall consideration moving from said vendors to the vendees. The stock sale agreement thus provided the threshold of the employment agreement of the same date and accentuated the employment feature by referring to Eve Bacon as "* * * full time employee of the within vendees * * *",  a status which was not to be disrupted by any extraneous activity. Although we regard the employment agreement as containing within itself sufficient evidence of mutuality of obligation, it appears that it was so interwoven with the stock sale agreement in point of time, subject matter and identity of parties as to make a joint consideration thereof proper in evaluating the rights and obligations of the parties.
It may be emphasized that the employment agreement committed the Karrs to employ Eve Bacon "regardless of the business form or entity of said newspaper corporation", while the concurrent stock sale agreement pointed up the purpose of the Karrs to form their new establishment of which the co-vendor, Eve Bacon, would be a full time employee pledged not to compete. Thus the Karrs and Winter Park Publishing Company, Inc., though technically distinct, were in effect one and the same and a conjunctive consideration of the two agreements would logically assist in appraising the relations of the parties and the circumstances of their dealings. See Standard Newspapers, Inc. v. Woods, Fla. 1959, 110 So.2d 397; J.M. Montgomery Roofing Co., Inc. v. Fred Howland, Inc., Fla. 1957, 98 So.2d 484; Thompson v. Shell Petroleum Corporation, 1938, 130 Fla. 652, 178 So. 413, 117 A.L.R. 248.
Mutuality of obligation is sometimes confused with mutuality of remedy. Obligation pertains to the consideration while remedy pertains to the means of enforcement. Mutual obligation is essential, but the means of enforcement may differ without necessarily affecting the reciprocal obligations of the parties. In Thompson v. Shell Petroleum Corporation, supra, the court said:
"* * * `The legal principle that contracts must be mutual does not mean that in every case each party must have the same remedy for a breach as the other. Mere difference in the right stipulated for does not destroy mutuality of remedy * * * so long as the bounds of reasonableness and fairness are not transgressed'. [32 C.J. Injunctions, § 297.]"
See also 7 Fla.Jur., Contracts, §§ 9, 10.
In Jones v. McCallum, 1885, 21 Fla. 392, McCallum agreed to write editorials for the Times Union during a period of one year "as his health may permit" for a consideration of $1,000.00. McCallum died a day or two after the date of the contract and wrote no editorials whatsoever. In the event of McCallum's death before the year's end, the money was to be paid to his widow. The court, in holding that there was a total failure of consideration and that the decedent's widow was not entitled to recover, said:
"* * * If no service was performed no pay was due. The practical result of a want of consideration and failure of consideration are the same. In the first case the agreement is void; in the second the agreement is valid at the time of making, but cannot be enforced because of subsequent failure of the consideration on which it was based." [Emphasis theirs.]
but, "* * * `had anything been done by McCallum under the contract we admit that Jones might have been liable for the full years compensation' * *". (Emphasis ours.)
The defendant in the cited case obviously did not breach the employment contract by refusing to pay for services rendered or by severing the employment, but we *170 think the case has a certain significance here. The McCallum contract was strikingly similar in referring to the rendition of services by employee McCallum "as his health may permit". The court indicated, though by way of dicta, that if the decedent had done any work prior to his death, his widow would have been entitled to recover the full year's compensation. Apparently the legal sufficiency of the contract itself was not questioned, and the court inferentially treated it as valid.
A prominent case involving the construction of an employment agreement is Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214, wherein the court said:
"The agreement of employment is signed by both parties. It has a wealth of recitals. The defendant insists, however, that it lacks the elements of a contract. She says that the plaintiff does not bind himself to anything. It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs. We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be `instinct with an obligation,' imperfectly expressed * * *. If that is so, there is a contract."
There is respectable authority in other jurisdictions holding it competent for parties to make a contract of employment binding upon one of them for a certain length of time but which the other party might terminate at will. Exercycle Corporation v. Maratta, 1960, 11 A.D.2d 677, 201 N.Y.S.2d 885; Moore County Carbon Company v. Whitten, Tex.Civ.App., 1940, 140 S.W.2d 880. This problem, however, is non-existent here since there appears no such unilateral feature in the employment agreement. Although the courts will not compel specific performance of personal service contracts, an employee may be held liable in appropriate proceedings for breach of his contract with his employer. See 56 C.J.S. Master and Servant, § 77; 25 C.J.S. Damages §§ 5, 6.
Under Sections D and E of the employment agreement the plaintiff-appellant bound herself, as we see it, to devote three years of her time, talent and services in behalf of the defendants' business, to cooperate in all promotions and to give advice in furtherance of the business. These covenants are avoided by the defendant-appellees in their reliance upon a contingency provision which, under a reasonable bilateral construction, would be an existing factor whether mentioned in the agreement or not. It was not intended as an escape clause. Certainly an employer is not ordinarily required to pay an employee where, through no fault of the employer, the employee fails or refuses to perform; but the mention of such eventuality does not destroy mutuality of obligation in the contract. Contracts duly executed for a lawful purpose should, if legally possible, be upheld; and doubtful or ambiguous language should be construed more strictly against the party who drew the contract or chose the language therein employed. See 7 Fla. Jur., Contracts, § 87.
We have carefully examined the authorities cited by able counsel for the appellees in support of their position that the employment agreement was insufficient for lack of mutuality. In most of these cases there was either hopeless ambiguity or palpable absence of mutual obligation. None of the cited cases involved a limited duration contract, but on the contrary pertained to franchises or employment contracts of indefinite or lifetime duration. See Miami Coca Cola Bottling Company v. Orange Crush Company, D.C., S.D., Fla. 1923, 291 F. 102, Aff'd, CCA 5th Cir., 1924, 296 F. *171 693, (perpetual franchise with express proviso whereby appellant could cancel at any time); Chatelier v. Robertson, Fla.App. 1960, 118 So.2d 241 (lifetime); Hope v. National Airlines, Inc., Fla.App. 1957, 99 So.2d 244, cert. denied, Fla. 1958, 102 So.2d 728 (permanent employment). "A great majority of the cases in the United States subscribe to the doctrine that a contract for permanent employment, if not supported by other consideration, is terminable at will." Chatelier v. Robertson, supra. (Emphasis theirs.) In the latter case the court found additional consideration and held that the order granting the motion to dismiss was error.
Hope v. National Airlines, Inc., Fla.App. 1958, 99 So.2d 244, involved an alleged breach of an oral contract of permanent employment. The Third District Court of Appeal affirmed dismissal of the complaint. If the plaintiff employee in that case were to work through the strike period he would be given employment as long as the airline remained in business. After finding that the statute of frauds was inapplicable, the court held that the appellant was seeking damages for an indefinite period of time depending on the life of the corporation. "Such damages would be so speculative as to render them impossible of determination. If the period of employment be indefinite, either party may terminate it at any time." The court held that absent an affirmative allegation of employment for a definite duration the complaint failed to plead an enforceable contract. That is not the situation in the present case where the term of employment was definitely set at three years.
In International Shoe Company v. Carmichael, Fla.App. 1959, 114 So.2d 436, also cited by the appellees, the contract there involved was held void for uncertainty and lack of adequate consideration. The contract provided that if the defendant would sell shoes in Perry, Florida, manufactured by the plaintiff, the plaintiff would grant him the exclusive agency there. The plaintiff sued to recover for shoes delivered and the defendant counterclaimed for breach of the alleged exclusive franchise. Judgment of recovery on the defendant's counterclaim was reversed. The defendant had testified that he was not required by the agreement to purchase any particular quantity of shoes from the plaintiff and that he was permitted to sell shoes of other manufacture. Moreover, for aught that appears from the reported decision the alleged agreement provided no specific date of termination of the so-called exclusive agency. Thus the facts of that case are materially different from those of the case at hand, as are also the facts of other of appellees' citations not specifically mentioned in this opinion.
Suits arising from personal service contracts tend to be uncommonly difficult, and it is apparent that the problems of construction presented by the pleadings in this case did not readily lend themselves to established precedent and easy solution. We are convinced, however, that the amended complaint sufficiently alleged a valid bilateral agreement. 35 Am.Jur., Master and Servant, §§ 26, 54.
The plaintiff appellant having pleaded a mutually binding contract of employment and a damaging breach by the defendants, we conclude that it was error to dismiss the amended complaint and to strike Winter Park Publishing Company, Incorporated, as a party defendant.
Reversed.
ALLEN, Acting Chief Judge, and KANNER, J., concur.