463 So.2d 437 (1985)
OCEAN DUNES OF HUTCHINSON ISLAND DEVELOPMENT CORPORATION, Appellant,
v.
Albert COLANGELO and Helen Colangelo, His Wife, and Lorraine Woodward, Appellees.
No. 84-560.
District Court of Appeal of Florida, Fourth District.
February 6, 1985.
Rehearing and Clarification Denied February 28, 1985.
*438 John L. Avery, Jr., Jupiter, for appellant.
Charles J. Dorfman, Port St. Lucie, for appellees-Colangelo.
Patricia J. Brown of Koebe & Brown, P.A., Jensen Beach, for appellee-Woodward.
BARKETT, Judge.
We affirm the trial court's final judgment, although one issue raised in this appeal merits discussion.
Appellant is a developer, and two of the appellees, the Colangelos, are buyers of a condominium unit. The developer contends that the trial court erred in granting the buyers specific performance of a contract by ordering the developer to convey a condominium unit to the buyers. The developer argues that the contract between the parties provided only one remedy to the buyers in the event of a breach by the developer, to wit, a return of the buyers' deposit. The lower court correctly granted specific performance.
There is no issue here of the developer's ability to perform. The building in question is completed, and requiring the developer to convey the unit to appellees works no hardship. See Con-Dev of Vero Beach, Inc. v. Casano, 272 So.2d 203 (Fla. 4th DCA 1973).
Absent any specific contractual restriction, a trial court has the authority, under certain circumstances, to order specific performance of a contract as requested by the victim of a breach. See Strong v. Chisolm, 422 So.2d 974 (Fla. 4th DCA 1982); Home America, Inc. v. Atkinson, 392 So.2d 268 (Fla. 2d DCA 1980); Black v. Clifton, 284 So.2d 465 (Fla. 4th DCA 1973); Northwestern National Insurance Company v. Greenspun, 330 So.2d 561 (Fla. 3d DCA 1976); Black v. Frank, 176 So.2d 113 (Fla. 1st DCA 1965). The issue, then, is whether the language of the contract in this case, which purports to limit the buyers to the "liquidated damages" of a return of their deposit, acts as a bar to the remedy of specific performance for a breach by the developer.
The pertinent provisions of the "Purchase Agreement" between the parties relative to the breach of that agreement are:
10. Default by Developer:

If Developer shall default in the performance of its obligations pursuant to this Agreement, Purchaser's only remedy shall be to terminate this Agreement, whereupon the Deposit shall be refunded to Purchaser and all rights and obligations hereunder shall thereupon become null and void; provided, however, that if the title to the premises shall not be in accordance with Paragraph 5[[1]] hereof because said title is affected by any encumbrance, outstanding interest or question of title which may according to reasonable expectations be removed within sixty (60) days after the scheduled closing date, then notwithstanding any other provisions of this Agreement to the contrary, Developer shall have the privilege but not the obligation, to remove or satisfy the same, and for this purpose Developer shall be entitled to adjourn the closing for a period not exceeding sixty (60) days by giving notice to Purchaser describing the defect and the steps to be taken to remove the same, and designating a new closing date. Developer shall not be required to bring any action or proceeding or otherwise incur any expense to render the title to the premises in accordance *439 with Paragraph 5 hereof. Purchaser may, nevertheless, accept such title as Developer shall be able to convey without reduction of the purchase price or a credit against the same because title is not as required by Paragraph 5 hereof and without liability on the part of the Developer therefor. [emphasis added]
11. Default by Purchaser:

If Purchaser shall fail to complete closing in accordance with the terms of this Agreement or otherwise default in Purchaser's obligations hereunder, then at the election of Developer:
(a) Developer shall be entitled to retain the Deposit as liquidated and agreed upon damages for the losses and injuries which Developer shall have sustained and suffered as a result of Purchaser's default, and thereupon the parties hereto will be released and relieved from all obligations under this Agreement. It is agreed that the provisions of this Paragraph 11A for liquidated and agreed upon damages are a bona fide provision for such and are not a penalty, the parties understanding that by reason of the withdrawal of the premises from sale to the general public at a time when other parties would be interested in purchasing the unit, the Developer will have sustained damages if Purchaser defaults, which damages will be substantial but will not be capable of determination with mathematical precision and therefore, as aforesaid, this provision for liquidated and agreed upon damages has been incorporated as part of this Agreement as a provision beneficial to both parties. Purchaser agrees that if he defaults in any of his obligations under this Agreement, he will not file any action against Developer seeking the return of any portion of the deposit or seeking any reduction in the amount of liquidated and agreed upon damages; or

(b) Developer may resort to any other legal or equitable remedy to which Developer may be entitled. In the event Developer does obtain judicial enforcement of one or more of its rights under this Agreement, Purchaser hereby agrees to pay all court costs and reasonable attorney's fees incurred by Developer. [emphasis added]
There is no question that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same. Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So.2d 1053 (Fla. 4th DCA 1983); Wright & Seaton v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982). Such contractual provisions, however, must be reasonable to be enforced. As the court said in Black v. Frank, 176 So.2d 113 (Fla. 1st DCA 1965):
Parties may stipulate by contract what the consequences of a breach shall be and such stipulation, if reasonable, is controlling and excludes other consequences. [emphasis added]
The court in Greenstein v. Greenbrook, Ltd., 413 So.2d 842 (Fla. 3d DCA 1982), reiterated this concept:
It seems clear fom the cases that the courts of this state will uphold any limitation of remedy provision in a contract, which limitation is mutual, unequivocal and reasonable. See, e.g., Black v. Frank, 176 So.2d 113 (Fla. 1st DCA 1965). [emphasis added]
Id. at 844.
There is nothing reasonable about the foregoing default provisions. In this contract, the seller's obligations are wholly illusory, while the buyers' are quite real. The developer can opt to sell the unit to any new buyer willing to pay a higher price than the existing contract price, or even fail to show title to be vested in the developer as required by paragraph 5 of the Agreement, with absolutely no harmful consequences; the developer must only return the buyer's own money. A return of one's own money hardly constitutes damages in any meaningful sense. It is especially unconscionable in this case in light of *440 the buyers' deprivation of the use of their money for several years.
The developer, on the other hand, in the event of a breach by the buyers, is able to choose between retaining the buyers' deposit or resorting "to any other legal or equitable remedy to which Developer may be entitled."
This issue was raised in the case of Sperling v. Davie, 41 So.2d 318 (Fla. 1949). The case was decided on other grounds but the court expressed in passing the view which we now espouse:
The appellants have posed four questions. The first of these challenges the court's decree that the original contract be enforced because, it is urged, the liability which should attach in the event of a breach of contract by either party was stated in the instrument itself, where it was provided in effect that if the purchaser failed to comply with its terms by a certain date the down payment of $500 should be retained by the sellers, while if the sellers should fail to comply, this amount should be returned As we understand the appellants' argument in support of this position, it simply means that for the remedy of specific performance, which might otherwise be available to the buyer in the event of a breach of contract by the sellers, there would be substituted the remedy of recovering that which he had paid. This seems to us to come perilously close to arguing that the sellers, after entering into a solemn agreement, could glibly dishonor it and restrict the buyer to regaining what was in practical effect already his, inasmuch as the transaction was not consummated and the sellers were therefore not entitled to the money.
Id. at 320 (emphasis in original).
To use the colloquialism of the trial judge, "Sauce for the goose is sauce for the gander." The parties can stipulate to different kinds of "sauces," but both parties must have genuine, not illusory, obligations. The relative "remedies" provided in this contract to the buyer vis-a-vis the developer are neither mutual nor reasonable. The contract between the parties constituted an agreement on the part of the developer/owner to convey, and on the part of the purchasers to pay for the subject condominium unit. This was an enforceable and binding contract, supported by valid consideration. See, e.g., Vance v. Roberts, 96 Fla. 379, 118 So. 205 (1928). Because the contract provides no reasonable remedy for its breach, the equitable remedy of specific performance fashioned by the trial court was correct.
AFFIRMED.
HERSEY and DELL, JJ., concur.
NOTES
[1] Paragraph 5 states:

5. Title Insurance.
Developer shall deliver to Purchaser, at closing, an owner's Title Insurance Policy from a title insurer licensed to transact business in the State of Florida covering the unit described in this Agreement, showing title to the unit to be vested in Developer.