665 So.2d 237 (1995)
PIZZA U.S.A. OF POMPANO INC., Appellant,
v.
R/S ASSOCIATES OF FLORIDA, a Pennsylvania Limited Partnership, Appellee.
Nos. 93-1782, 93-3240 and 94-0701.
District Court of Appeal of Florida, Fourth District.
August 23, 1995.
Opinion Granting in Part and Denying in Part Motion for Rehearing and Clarification November 29, 1995.
Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Glen Rafkin of Greenspoon, Marder, Hirschfeld & Rafkin, P.A., Fort Lauderdale, for appellant.
Nancy Little Hoffman of Nancy Little Hoffman, P.A., Fort Lauderdale, and Karen M. Sullivan of Ferdinand & Sullivan, P.A., Fort Lauderdale, for appellee.
Karen M. Sullivan of Ferdinand & Sullivan, P.A., Fort Lauderdale, Bruce S. Rogow, Beverly A. Pohl, Fort Lauderdale, for appellee on motion for rehearing and clarification.
STEVENSON, Judge.
This is an appeal involving a commercial lease between appellant, Pizza U.S.A. of Pompano, Inc., a tenant in a shopping mall, and appellee, R/S Associates of Florida, a limited partnership, the landlord. At the conclusion of the trial below the jury found that, among other things, Pizza U.S.A. had *238 defaulted under the lease by failing to pay rent and that R/S had not breached any of its obligations. Thereafter, the trial court entered a judgment on the jury verdict, a final judgment of eviction, and a final order awarding fees and costs to R/S. We reverse the eviction because the contract between the parties contained a valid clause giving the tenant a reasonable period of time to cure any alleged breach (including non-payment of rent) after resolution of the matter in dispute.
We write primarily to discuss the cure provision, paragraph 23.18, of the parties' agreement which the trial court found to be void as against public policy and which we find to be a valid exercise of freedom of contract.[1] A review of the facts is necessary to understand the nature of the lengthy and somewhat contentious relationship between the parties.
In June 1984, Pizza U.S.A. entered into a pre-construction lease for space in a shopping mall called the Pompano Outlet Mall located in Broward County, Florida. The lease was for an initial period of five years with three five-year options to renew. Under the terms of the lease agreement, Pizza U.S.A. was not to commence paying rent until the mall was leased and occupied at 80% capacity. This 80% occupancy provision was important to Pizza U.S.A. because the pizzeria intended to derive its clientele from mall shoppers.
Pizza U.S.A. opened in May 1986. Shortly into Pizza U.S.A.'s tenancy, the mall experienced a number of major financial difficulties and changes of ownership. In September 1986, the lender filed a foreclosure action against the mall's original developers. Pursuant to that action, the trial court appointed a receiver, Lee Management, Inc., to conduct the affairs of the mall. When Lee Management took over, it demanded that Pizza U.S.A., along with other tenants, commence paying rent. Pizza U.S.A. refused to pay rent, relying on the provisions of the lease agreement which provided that rental payments would not be due unless the mall was 80% occupied.
In March 1987, the trial court entered an order authorizing Lee Management to cancel the leases of certain tenants, including Pizza U.S.A., if the tenants refused to execute amendments to their leases. In May 1987, with eviction looming, Pizza U.S.A. agreed to amend the terms of the original lease agreement. The amendment provided that all rent accrued through the end of February 1987, was waived, and that, beginning in March 1987 through the end of November 1987, rent was to be based upon a percentage of the gross receipts of Pizza U.S.A. In addition, the amendment provided in section 2(c)2 that: "Commencing December 1, 1987 and thereafter through the term of the Lease, rent shall be paid in the amounts as set forth in the Lease."
Following the amendment, a dispute once again arose between Pizza U.S.A. and the receiver concerning the 80% occupancy provision. While Pizza U.S.A. believed that the 80% occupancy provision had survived the amendment, the receiver believed that it had not survived and that rent was due even though the mall was not 80% occupied. This dispute festered but was not resolved.
R/S purchased the mall in October 1988, and assumed the leases that were in place. At the time R/S acquired the mall, it intended to create a manufacturers outlet mall. In the meantime, Sawgrass Mills (a very large and successful manufacturers outlet mall) was built and many prospective tenants for R/S's mall went to Sawgrass Mills instead. R/S closed its mall from August 1989 to October 1991, and completed three million dollars in renovations to convert the mall into an indoor flea market. No rent was charged for any tenant during the time the mall was closed. In June 1991, Pizza U.S.A. tried to reenter the space it had previously occupied. *239 R/S informed Pizza U.S.A. that its lease had been terminated for nonpayment of rent which was allegedly due for the period of October 1988 through July 1989.
The mall reopened as the Festival Flea Market in October 1991. When the flea market opened R/S agreed to allow Pizza U.S.A. to reenter the premises with the agreement that Pizza U.S.A. would pay the same percentage rent as the other food vendors, which was 15% of the vendors' gross receipts against a minimum base rent of $1500 per month. Pizza U.S.A. paid the base rent for the last half of October and for all of November, but it then refused to continue paying. Pizza U.S.A. alleged that when the mall reopened as a flea market, the days and hours of operation changed from seven days per week to five days per week and its hours of operation changed as well. This change, according to Pizza U.S.A., caused it to lose potential customers and profits.
The parties' on-going disputes resulted in this litigation commencing in February 1992, with Pizza U.S.A. filing suit against R/S and R/S counterclaiming. As previously mentioned, after a five day trial, the jury found that (a) Pizza U.S.A. had defaulted on the lease by failing to pay rent from October 1988 through July 1989, (b) R/S did not breach the lease with Pizza U.S.A., and (c) R/S was entitled to $10,493.39 in damages. Thereafter, the court entered a judgment on the jury verdict. It also entered a final judgment of eviction, but stayed the eviction pending appeal. Pizza U.S.A. timely appealed both judgments. Lastly, a "Final Order as to Attorney's Fees and Costs" was entered awarding R/S $22,888.89 in costs and $102,600 in fees. The timely appeal of that order has been consolidated with the first appeal.
First, we find that the trial court did not err in determining that the lease amendment was ambiguous, in admitting parole evidence on that issue and in submitting the issue to the jury. Neither do we find error in the jury's determination that the 80% provision did not survive the parties' amendment to the original agreement. However, we do find that the trial court erred in holding that paragraph 23.18 was invalid as against public policy. Because paragraph 23.18 is valid, the eviction is improper and must be reversed.
R/S seems to concede that paragraph 23.18 cannot meet the stringent test required for invalidation based on public policy grounds.
Courts ... should be guided by the rule of extreme caution when called upon to declare transactions as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it is made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental policy of the right to freedom of contract between parties sui juris.

Bituminous Casualty Corp. v. Williams, 154 Fla. 191, 197, 17 So.2d 98, 101-02 (1944).
Making little argument in support of the trial court's finding that paragraph 23.18 is void on public policy grounds, R/S contends that the provision is invalid in any event because it was neither mutual, unequivocal, or reasonable. R/S argues that paragraph 23.18 prevents it from enforcing Pizza U.S.A.'s rent obligation and obtaining a final determination or judgment against Pizza U.S.A. in a singular suit. Thus, it argues, the provision is unreasonable and unenforceable. As support for this position, R/S cites Ocean Dunes of Hutchinson Island Development Corp. v. Colangelo, 463 So.2d 437 (Fla. 4th DCA 1985) and Blue Lakes Apartments, Ltd. v. George Gowing, Inc., 464 So.2d 705 (Fla. 4th DCA 1985).
In Colangelo, a developer and the Colangelos entered into a contract for the sale of a condominium unit. The building was completed, yet the developers failed to convey the unit to the buyers. The trial court granted the Colangelos' request for specific performance by ordering the developer to convey a condominium unit to the buyers despite a provision in the contract which provided for only one remedy in the event the developer breached  a return of the buyer's deposit. 463 So.2d at 438.
In affirming the trial court's decision, this court stated:
There is no question that parties to a contract may agree to limit their respective remedies and that those remedies *240 need not be the same. Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So.2d 1053 (Fla. 4th DCA 1983); Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982). Greenstein v. Greenbrook, Ltd., 413 So.2d 842 (Fla. 3d DCA 1982). Such contractual provisions, however, must be reasonable to be enforced.
Id. at 439. Because the developer's obligations were wholly illusory in that it could breach the agreement with no consequences whatsoever (save returning the Colangelos' deposit money), but the buyer's obligations were very real in that, in the event of a breach, the developer could choose between retaining the buyer's deposit or seeking other legal or equitable remedies, this court found the default provision unreasonable. Id. at 439-40.
The same issue with similar facts was raised in Blue Lakes Apartments, 464 So.2d at 705, where this court relied upon the Colangelo decision and found that the developer's "heads-I-win, tails-you-lose" default clause was illusory and contrary to the concept of fair dealing in the marketplace. Id. at 709.
In a similar vein, R/S relies on Hunt v. First National Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA 1980), for its argument that paragraph 23.18 renders the contract illusory and one-sided. In Hunt an addendum to a 99 year lease provided that rent was not to accrue until the lessee built a small shopping center on the premises. The court interpreted this addendum to mean that if construction of the facility was never completed, then rent would never be due and the $20,000 rental deposit would be returned at the end of the rental period. Id. at 1198. The court held that there was no mutuality of obligation, the contract bound one party and not the other and the agreement was unconscionable.
Here, we do not find paragraph 23.18 to be unconscionable, illusory or lacking mutuality. Moreover, paragraph 23.18 is readily distinguishable from the contractual provisions addressed in Colangelo, Blue Lakes, and Hunt. In sum, paragraph 23.18 provides that if there is a dispute between the landlord and tenant, the dispute has to be resolved before a default can be declared against the tenant. If there is litigation over the dispute, then the litigation has to be resolved prior to a declaration of default. Once the exact nature of the alleged deficiency has been determined, the tenant then has a reasonable time in which to cure the deficiency prior to any declaration of default under the contract. Consequently, in the context of eviction for failure to pay rent, paragraph 23.18 means that if there is a dispute over rent which results in litigation, the tenant may not be evicted until the litigation is resolved and the tenant has been given a reasonable opportunity to cure the deficiency or, in effect, pay any rent found due.
The evidence disclosed that Pizza U.S.A. had invested large sums of money in the pizzeria and wanted additional assurances against eviction. On the other hand, Pizza U.S.A. signed its lease before the mall was even completed, was the first food service in the mall and was considered a desirable tenant by the original owners of the mall. Under those circumstances, it is not difficult to imagine why Pizza U.S.A. might want to protect itself from the harsh remedy of eviction and why the original owners would accommodate Pizza U.S.A.'s concerns. Under this scenario, paragraph 23.18 can hardly be deemed unconscionable.
Further, the provision is not illusory because Pizza U.S.A. was and is required to pay rent. While disputes between the parties may delay the payment of rent due, Pizza U.S.A. is not permanently excused from the payment of rent by virtue of paragraph 23.18. If Pizza U.S.A. fails to cure its nonpayment of rent by timely payment after the dispute has been resolved, Pizza U.S.A. may be evicted. Accordingly, we see no reason why the courts should interfere with the bargain struck by the parties in this case.
We reverse the judgment of eviction and vacate the award of attorney's fees and costs so that the trial court, on remand, may recalculate the fees and costs in accordance with this opinion. In all other respects, we affirm.
DELL and STONE, JJ., concur.

ON MOTION FOR REHEARING AND CLARIFICATION
STEVENSON, Judge.
We grant in part and deny in part the motion for rehearing and clarification in this dispute over a commercial lease.
*241 In our earlier opinion, we reversed the judgment of eviction against the tenant/appellant, but affirmed the finding that the tenant had defaulted by non-payment of rent. In the final order below, the trial court found that the landlord/appellee was entitled to attorney's fees and costs pursuant to a "prevailing party" attorney's fee clause in the contract. We remanded the case to the trial court so that it could "recalculate the fees and costs" in accordance with the opinion.
Both appellant and appellee profess confusion over the remand directions which we gave the trial court concerning the calculation of attorney's fees. We write solely to address that apparent confusion. Our intent was to remand this cause to the trial court so that it could determine the prevailing party in the litigation and award fees to that party. In rejecting a rigid and mechanical application of the so-called "net judgment rule," our supreme court said that "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." Moritz v. Hoyt Enters., Inc., 604 So.2d 807, 810 (Fla. 1992). See also Prosperi v. Code, Inc., 626 So.2d 1360 (Fla. 1993) (a flexible approach in determining the prevailing party is required  the trial court must have discretion to consider the equities and determine which party has in fact prevailed on the significant issues). Both appellant and appellee have moved for attorney's fees on appeal. We vacate any previous orders entered on those requests and provisionally grant both motions, subject to the trial court's determination on remand as to which party is the "prevailing party" on the significant issues in the litigation.
In all other respects we deny appellee's motion for rehearing and appellant's motion for clarification.
DELL and STONE, JJ., concur.
NOTES
[1] Paragraph 23.18 of the lease agreement provides as follows:

In all instances where tenant shall correct, perform, pay or have any other obligation within a specific period of time persuant [sic] to thsi [sic] lease, the same shall have a reasonable time to cure and tenant shall not be deemed to be in default, if there is a difference of opinion of the same &/or there is correspondence, negotiation, arbitration, or littigation [sic], until the specified time period after the dispute has been resolved.