WALLACE, Judge.
 

 Redington Grand, LLP, a Florida limited liability partnership (the Developer), challenges a final summary judgment in favor of Level 10 Properties, LLC, a Florida limited liability company; Dennis Markley; Carl B. White; and Crystal White Montgomery (collectively, the Buyers). Because the circuit court erred as a matter of law in concluding that a remedial limitation in the separate contracts between the Developer and the Buyers rendered the contracts illusory and unenforceable, we reverse the final summary judgment and remand for further proceedings.
 

 THE FACTS
 

 On June 15, 2005, each of the Buyers entered into separate but substantially identical preconstruction contracts with the Developer for the purchase and sale of a unit in a condominium project in North Redington Beach to be known as “The Redington Grand.”
 
 [1]
 
 The project was relatively small; it had only twelve units. Level 10 Properties and Ms. Montgomery agreed to a purchase price of $2,200,000 each for their units. Mr. Markley and Mr. White agreed to a purchase price of $2,600,000 each for their units. Level 10 Properties and Ms. Montgomery each paid an initial deposit of $225,000, with a second deposit of $215,000 for each unit due upon
 
 *606
 
 completion of the roof. Mr. Markley and Mr. White each paid an initial deposit of $265,000, with a second deposit of $255,000 for each unit due upon completion of the roof.
 

 The contracts called for the Developer to complete the project and obtain certificates of occupancy for the units on or before June 15, 2007. If the Developer failed to meet this deadline, the Buyers had the option to terminate the contracts and to receive the return of their deposits or to allow the Developer additional time to complete the project and close the sale of the units.
 

 The default provisions of the contracts are of particular interest in this case. These provisions were as follows:
 

 4. DEFAULT BY SELLER: If the Seller defaults under this Contract by a material (substantial) breach which shall not be cured and corrected by Seller within ten (10) days following receipt of written notice of such default from Buyer, then Buyer may either: 1) terminate this Contract in its entirety and receive a full refund of the First Deposit and the Second Deposit paid by Buyer; or 2) bring an action in a Court of competent jurisdiction to seek specific performance of this Contract by Seller.
 

 5. DEFAULT BY BUYER: If the Buyer defaults under this Contract by a material (substantial) breach which shall not be cured and corrected by Buyer within ten (10) days following receipt of written notice of such default from Seller, then Seller may either: 1) terminate this Contract in its entirety and receive and retain the First Deposit and the Second Deposit paid by Buyer as liquidated and agreed upon damages since the amount of actual damages is incapable of ascertainment; or 2) bring an action in a Court of competent jurisdiction to seek specific performance of this Contract by Buyer.
 

 Thus the contract limited the Buyers’ remedy to the return of all deposits or specific performance. The Developer’s remedy was limited to the retention of the Buyers’ deposits or specific performance.
 

 In January 2007, the Developer notified the Buyers that the roof was complete and that the second deposits were due and payable. When the Buyers did not pay the second deposits, the Developer’s attorney notified the Buyers that they were in default under the contract for failure to pay the second deposits and gave them ten days to cure the claimed defaults. In response, the Buyers’ attorney asserted that the roof was not complete and, accordingly, that the second deposits were not due. The Buyers’ attorney also made multiple requests for assurances from the Developer that it would be able to complete the project and obtain the certificates of occupancy by June 15, 2007.
 
 [2]
 
 On March 8, 2007, having not received the assurances that they had demanded from the Developer, the Buyers declared that the Developer was in default under the contracts and demanded the return of their deposits.
 

 Meanwhile, the Developer proceeded with construction and obtained the necessary certificates of occupancy for the units on May 9, 2007. The Developer scheduled closings for the four units with the Buyers for June 15, 2007, but the Buyers declined to close.
 

 THE COURSE OF THE PROCEEDINGS
 

 On March 30, 2007, the Buyers filed a single action against the Developer seek
 
 *607
 
 ing the return of their initial deposits with interest.
 
 [3]
 
 The Buyers’ theory was that the Developer had breached the contracts by failing to comply with the Buyers’ demands for adequate assurance of the Developer’s ability to complete the project by June 15, 2007. Later, the Buyers amended them complaint to assert a claim that the remedial limitations in the contracts rendered them illusory and unenforceable. The Developer counterclaimed for specific performance or, in the alternative, for damages.
 

 After conducting a substantial amount of discovery, the parties filed cross-motions for summary judgment. The Developer and the Buyers both sought summary judgment on the Buyers’ claim that the remedial limitations in the contracts rendered the contracts illusory and unenforceable. The Developer also moved for partial summary judgment on other issues.
 

 THE CIRCUIT COURT’S ORDER
 

 In an order on the cross-motions for summary judgment, the circuit court addressed only the issue of whether the remedial limitations in the contracts rendered the contracts illusory and unenforceable. The circuit court framed the issue before it as whether the remedial limitation that the contracts imposed on the Buyers “lacks mutuality and, if so, whether that lack of mutuality defeats the essential requirements to the formation of a bilateral contract.” Relying on two cases involving claims under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720 (ILSA), the circuit court concluded that “the default provisions in the contract[s are] illusory and mutually unenforceable, as the [Developer] has no real obligation.” Based on this conclusion, the circuit court granted the Buyers’ motion for summary judgment and denied the Developer’s motion for summary judgment. Afterward, the circuit court entered a final judgment awarding each of the Buyers the return of their initial deposit plus interest from the contract date and providing that the Developer would take nothing on its counterclaim.
 

 THE STANDARD OF REVIEW
 

 A summary judgment is proper only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Accordingly, we apply a de novo standard to the review of a summary judgment.
 
 Id.
 
 Our review of the summary judgment in this case requires us to determine whether the circuit court correctly ruled as a matter of law that the remedial limitations in the contracts rendered the contracts illusory and unenforceable.
 

 DISCUSSION
 

 The contracts under review in this case impose limitations on both parties relating to the recovery of damages. In the event of a default by the Buyers, the Developer may retain their deposits as liquidated damages or bring an action for specific performance. On the other hand, in the event of a default by the Developer, the Buyers may either obtain the return of their deposits or bring an action for specific performance. Thus both parties may seek specific performance of the contract. But if the Developer elects not to pursue the remedy of specific performance, it may recover damages by retaining the Buyers’ deposits. But unlike the Developer, the Buyers are effectively barred from seeking damages. “A return of one’s own money hardly constitutes damages in any mean
 
 *608
 
 ingful sense.”
 
 Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo,
 
 463 So.2d 437, 439 (Fla. 4th DCA 1985).
 

 The Buyers correctly note that the contracts’ remedial limitations favor the Developer. However, the Buyers led the circuit court into error by approaching the difference in the remedies available to the contracting parties as an issue relating to mutuality of obligation instead of mutuality of remedy. As this court has previously observed, “[m]utuality of obligation is sometimes confused with mutuality of remedy. Obligation pertains to the consideration while remedy pertains to the means of enforcement. Mutual obligation is essential, but the means of enforcement may differ without necessarily affecting the reciprocal obligations of the parties.”
 
 Bacon v. Karr,
 
 139 So.2d 166, 169 (Fla. 2d DCA 1962).
 

 Here, the parties’ contracts do not present any issue relating to mutuality of obligation. Under the contracts, the Developer agreed to sell the condominium units in question to the Buyers. In exchange, the Buyers agreed to pay the stated purchase prices for the units. Unquestionably, this exchange of promises created an enforceable and binding contract.
 
 See Vance v. Roberts,
 
 96 Fla. 379, 118 So. 205, 206-07 (1928);
 
 Ocean Dunes,
 
 463 So.2d at 440.
 

 It is well settled “that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same.”
 
 Ocean Dunes,
 
 463 So.2d at 439 (citing
 
 Jay Vee Realty Corp. v. Jaymar Acres, Inc.,
 
 436 So.2d 1053 (Fla. 4th DCA 1983)). “[A]n absence of mutuality of remedies will not destroy an agreement’s validity.”
 
 Blue Paper, Inc. v. Provost,
 
 914 So.2d 1048, 1052 (Fla. 4th DCA 2005) (citing
 
 LaBonte Precision, Inc. v. DPI Indus. Corp.,
 
 507 So.2d 1202, 1203 (Fla. 4th DCA 1987));
 
 see also Hackett v. J.R.L. Dev., Inc.,
 
 566 So.2d 601, 603 (Fla. 2d DCA 1990) (holding that the default provisions of a real estate purchase agreement were void for lack of mutuality of remedy, but holding that the seller was not entitled to the recovery of any damages for breach of the agreement because it had failed to plead actual damages).
 

 Even if the contracts lacked mutuality of obligation at their inception, the entry of a summary judgment for the Buyers on this basis still would have constituted error. The Developer raised the affirmative defense of performance of its obligations under the contracts. In support of this defense, the Developer made a record showing that it had completed construction of the condominium project, obtained the requisite certificates of occupancy, and scheduled closings for the units. Performance by the Developer would have been a complete defense to any claim by the Buyers arising from want of mutuality of obligation, rendering summary judgment for the Buyers on that basis inappropriate.
 
 [4]
 

 See Ponce Dev. Co. v. Espino,
 
 449 So.2d 317, 319 (Fla. 3d DCA 1984) (holding that when a contract for the construction and conveyance of a condominium unit “became executed by the [builder’s] full performance according to the terms of the contract — except as to transfer of title at a closing, which final act was impeded by the [purchaser] — the defect of lack of mutuality of [the builder’s] obligation was cured and could not be a defense to enforcement of the contract”);
 
 Wright & Seaton, Inc. v. Prescott,
 
 420 So.2d 623, 627 (Fla. 4th DCA 1982).
 

 The circuit court found support for its ruling in
 
 Samara Development Corp. v.
 
 
 *609
 

 Marlow,
 
 556 So.2d 1097 (Fla.1990), and
 
 Hardwick Properties, Inc. v. Newbern,
 
 711 So.2d 35 (Fla. 1st DCA 1998). Both
 
 Samara
 
 and
 
 Hardwick
 
 involved a question about whether the remedial limitations in the real estate purchase agreements under review in those cases were adequate to bring the transactions within the “two-year completion” exemption available under ILSA.
 
 See generally
 
 William P. Sklar & Jennifer L. Dolce,
 
 The Interstate Land Sales Full Disclosure Act’s Two-Year Completion Exemption,
 
 73 Fla. B.J. 56 (Feb. 1999) (discussing ILSA and its impact on condominium developers, with particular attention to the two-year completion exemption). These cases are inapposite for two reasons. First, this case does not involve a claim under ILSA or any question about the applicability of the two-year completion exemption. Second, neither the
 
 Samara
 
 nor the
 
 Hardwick
 
 case constitutes authority for concluding that the contracts under review in this case are illusory and unenforceable. A recent response by a federal district court to a similar argument urging reliance on decisions interpreting ILSA to support contract rescission is apt:
 

 The [condominium contract purchasers] offer various ILSA case law to support contract rescission.
 
 See Samara Development Corp. v. Marlow,
 
 556 So.2d 1097 (Fla.1990);
 
 Stein v. Paradigm Mirsol, LLC,
 
 551 F.Supp.2d 1323 (M.D.Fla.2008). In such cases, however, the courts merely interpreted 15 U.S.C. § 1702, which exempts developers from ILSA compliance so long as the purchase agreement obligates such developer to complete construction within two years. Within this context, those courts narrowly held that a developer may not qualify for the § 1702 exemption by promising construction within two years, yet simultaneously limiting the purchaser’s right to damages or specific performance. Thus, the cases [the purchasers] cited engage the [discrete] issue of ILSA exemption, and in no way support or authorize rescission of the Agreements.
 
 See Samara,
 
 556 So.2d at 1101 (“we hold that [developer] is not exempted from the provisions of the [ILSA]”);
 
 Stein,
 
 551 F.Supp.2d [at] 1331 (contract not exempt from ILSA given limitation on buyer’s right to special damages).
 

 Weaver v. Opera Tower, LLC,
 
 No. 07-23332-CIV, 2008 WL 4145520, at *4 n. 14 (S.D.Fla. Aug. 1, 2008). Thus the circuit court’s reliance on
 
 Samara
 
 and
 
 Hardwick
 
 was misplaced.
 

 CONCLUSION
 

 For these reasons, we reverse the final summary judgment in favor of the Buyers and remand this case to the circuit court for further proceedings consistent with this opinion.
 

 Reversed and remanded for further proceedings.
 

 VILLANTI and KHOUZAM, JJ., concur.
 

 [1]
 

 . The facts are drawn from the pleadings, depositions, affidavits, and documentary evidence in the record.
 

 [2]
 

 . The Developer was not contractually obligated to complete the project by June 15, 2007. However, its failure to do so would trigger the Buyers' right to terminate the contracts and to obtain the return of their deposits.
 

 [3]
 

 . The Developer did not object to the joinder of the four separate claims in one action.
 

 [4]
 

 . The Buyers claimed dial the Developer had not completed performance of its obligations under the contracts. Thus there may have been a disputed issue of material fact relating to the Developer’s defense of performance.