DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SKY AVIATION HOLDINGS LLC,**
Appellant/Cross-Appellee,

v.

**AVIATION UNLIMITED,**
Appellee/Cross-Appellant.

No. 4D2024-0725

[December 17, 2025]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie R. Goodman, Judge; L.T. Case No. 502021CA013571XXXXMB.

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale, for appellant/cross-appellee.

Ronnie D. Dykes of Law Office of Ronnie D. Dykes, P.A., Boca Raton, and Jared A. Schneider of Tressler LLP, Chicago, Illinois, for appellee/cross-appellant.

PER CURIAM.

This appeal and cross-appeal involves an aircraft sale contract which Sky Aviation Holdings, Inc. ("the seller") admittedly breached when the seller discovered the sale would no longer be profitable. When Aviation Unlimited ("the buyer") sued the seller for breach of contract, the seller argued the contract limited the buyer's monetary remedies. Pre-trial, the circuit court entered partial summary judgment for the buyer, finding the contract improperly limited the buyer's remedies. The circuit court permitted the buyer to recover the lost profits which the buyer had expected to earn by re-selling the aircraft to a third party. A jury returned a verdict for the buyer for the lost profits amount which the buyer had claimed at trial. However, the circuit court vacated the jury's verdict because of the buyer's counsel's alleged discovery abuses, and ordered a new trial. The seller appeals from the circuit court's partial summary judgment order, while the buyer cross-appeals from the order vacating the jury's verdict. We reverse the circuit court's partial summary judgment order, and affirm the order vacating the jury's verdict.

### *i.   Background*

The seller agreed to sell an aircraft to the buyer for $1,050,000.   The sale contract stated that the buyer would initially deposit $25,000 with an escrow agent.   The buyer would then have the aircraft inspected at the buyer's expense.   After the inspection, the buyer was required to notify the seller whether the buyer either:   (1) accepted the aircraft; (2) conditionally accepted the aircraft "subject to the [s]eller's recertification of all airworthiness discrepancies"; or (3) rejected the aircraft.

If the buyer accepted the aircraft, the buyer had to deposit an additional $25,000 with the escrow agent, then pay the remaining $1,000,000 at closing.   If the buyer rejected the aircraft, the buyer had to reimburse the seller for relocating the aircraft and any other sums due, and the parties would "return[] to their respective positions *ab initio.*"

Contract section 10.4(a) stated that if the buyer defaulted, the seller's "exclusive remedies" were to keep the aircraft and the buyer's deposit. Section 10.4(b) stated that if the seller defaulted by "fail[ing] to deliver the [aircraft] in accordance with the terms of [the contract]," the buyer's "sole remedies" were the seller's reimbursement of the buyer's inspection costs.

The buyer's inspection cost $12,000.   The inspector identified several aircraft components that needed repair or replacement, costing an estimated $51,898.67 for parts and labor.   After the inspection, the buyer informed the seller that the buyer conditionally accepted the aircraft subject to the seller making these repairs.   The repairs were completed over two months and ultimately cost $108,017.70.   The seller paid the invoice in full, but the repair costs turned the transaction into a loss for the seller.

Four days after the seller had received the $108,017.70 invoice for the repairs, the seller sent notice to the buyer that the seller was electing not to complete the transaction.   The notice stated the seller would reimburse the buyer for the buyer's inspection costs per contract section 10.4(b).   The seller also directed the escrow agent to return the buyer's deposit.

The next day, the seller's attorney emailed the buyer's attorney reiterating that "the seller is breaching the contract and will not fulfill its obligations."   The seller's attorney stated that "[t]he sole remedy available for such breach is the payment of the buyer's inspection expenses which the seller is prepared to do," and requested any invoice so the seller could pay it.

Instead, the buyer sued the seller for breach of contract. Pretrial, the circuit court considered competing summary judgment motions. Relevant here, the buyer's motion argued that contract section 10.4(a) permitted the seller to both retain the buyer's $25,000 deposit and sell the aircraft to another person if the buyer defaulted, but section 10.4(b) permitted the buyer to recover only the buyer's inspection costs if the seller defaulted, thus rendering section 10.4 illusory. The circuit court entered a partial summary judgment for the buyer, concluding section 10.4(b) was illusory and did not limit the buyer's damages.

The case proceeded to a jury trial. The trial focused on the buyer's damages. On four separate occasions, the circuit court told the jury: (1) the court already had ruled the seller had breached the contract; and (2) the jury must ignore contract section 10.4(b) when determining damages. During trial, the buyer's representative testified the buyer had a contract to sell the aircraft to a third party. The jury ultimately awarded the third-party contract amount to the buyer as lost profits.

Post-trial, the seller filed a motion for judgment notwithstanding the verdict based on the buyer's alleged "lackluster" discovery responses regarding the buyer's alleged lost profits. The circuit court had noted before trial that the buyer's discovery responses had essentially stated "we don't have anything, so we're not telling you anything." The buyer's counsel acknowledged that "errors were made" in crafting the buyer's discovery responses, but argued the errors were not prejudicial.[1] The circuit court found the buyer's counsel's discovery misconduct was "clear," "severe," "egregious and inexcusable," and "reflect[ed] a cavalier and egregious disregard for the discovery process." But, the circuit court concluded, the buyer could not be held liable for the egregious errors of counsel.[2] As a result, the circuit court ordered a new trial on the buyer's damages.

The seller's appeal argues the circuit court erred in entering partial summary judgment finding contract section 10.4(b) to be illusory and removing the limits on the buyer's remedies. The buyer's cross-appeal

---

[1] The attorney who had signed the discovery responses was not a Florida Bar member. The attorney was later admitted pro hac vice.

[2] We remind counsel that Florida courts admonish against "trials by ambush." *Office Depot, Inc. v. Miller*, 584 So. 2d 587, 589 (Fla. 4th DCA 1991) (citing *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981)). The circuit court's conclusion that the discovery violations were severe are well-founded. But based on our ultimate conclusion in this appeal, we need not address the issue further.

argues the circuit court erred in vacating the jury's verdict and ordering a new trial on the buyer's damages.

### ii. Analysis

On the seller's appeal, we conclude that contract section 10.4(b) was not illusory and, as a result, the circuit court erred in granting partial summary judgment for the buyer and removing the limits on the buyer's remedies. On the buyer's cross-appeal, we affirm the order vacating the jury's verdict without further comment.

The circuit court's partial summary judgment order finding contract section 10.4(b) was illusory shaped the entire trial. Without that order, the case was ripe for partial summary judgment for the seller based on contract section 10.4(b).

Parties to a contract may agree to limit their respective remedies, and those remedies need not be the same. *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. 4th DCA 1985). The contractual provision, however, must be reasonable for a trial court to enforce it. *Id.* (citation omitted). To be reasonable, both parties must have genuine obligations. *Id.* at 440.

In *Ocean Dunes*, condominium unit buyers sought specific performance against the developer to convey the unit to the buyers. *Id.* at 438. The parties' purchase agreement had provided that, if the buyers breached, the developer could either retain the buyers' deposit or pursue "any other legal or equitable remedy to which Developer may be entitled." *Id.* at 439. But if the developer breached, the buyers' only remedy was to terminate the agreement and have their deposit refunded. *Id.* at 438. The trial court's final judgment found the provision was unreasonable and granted specific performance for the buyers. *Id.* at 438, 440.

On the developer's appeal, we agreed with the trial court that the provisions were unreasonable and therefore unenforceable. *Id.* at 440. We noted that the developer could breach the purchase agreement by refusing to convey the unit to the buyers and selling it to a third party for a higher price. *Id.* at 439. In that situation, the developer would suffer no "harmful consequence[]," as the developer must only return the buyers' "*own money*," which "hardly constitutes damages in any meaningful sense." *Id.* In contrast, if the buyers breached the contract, the developer could choose any legal or equitable remedy to which the developer may have been entitled. *Id.* at 440. Because the developer's obligations were "wholly

illusory" and the buyers' obligations were "quite real," we affirmed the trial court's final judgment. *Id.*

The key in *Ocean Dunes* was that one party had no obligation and the other party's obligations were real. Here, contract section 10.4 imposed real obligations on both the seller and the buyer.

More similar to the instant case is *Inlet Beach Cap. Investments, LLC v. F.D.I.C.*, 778 F.3d 904 (11th Cir. 2014). There, a buyer contracted to purchase forty acres of land for nearly $2 million. *Id.* at 905. Under the contract, if the seller breached, the buyer was entitled to "the return of its earnest money and up to $1,000.00 in out-of-pocket costs." *Id.* at 907. The contract also provided that the seller could not be liable to the buyer for any actual, punitive, or consequential damages, and the buyer could not sue for specific performance. *Id.* The contract featured a similar provision for the seller if the buyer "refuse[d] or fail[ed] to consummate" the purchase; the seller would retain the earnest money deposit "as its sole and exclusive remedy . . . ." *Id.* But if the buyer committed "any other default," the seller was entitled to all "rights and remedies available at law or in equity . . . ." *Id.*

When the seller refused to convey one of the parcels, the buyer sued under the contract for damages, specific performance, punitive damages, and attorneys' fees. *Id.* at 905-06. The buyer contended that the contract's remedies limitation was unenforceable due to lack of mutuality. *Id.* at 907. The seller moved to dismiss, arguing that contract's remedies limitation barred the buyer's claims. *Id.* at 906.

The federal district court granted the seller's motion to dismiss, and the Eleventh Circuit affirmed. *Id.* at 906, 908. The Eleventh Circuit held the parties' respective remedies were not "unreasonably disparate" because each party was "precluded from obtaining actual damages or specific performance" if the other party failed to consummate the sale. *Id.* at 908. Further, the Eleventh Circuit distinguished *Ocean Dunes* because the buyers' remedies in that case were "limited to the return of its deposit, without recovery of any out-of-pocket expenses." *Id.*

But in *Inlet Beach*, the Eleventh Circuit observed, the buyer could recover its deposit *and* an additional $1,000 in out-of-pocket costs. *Id.* The Eleventh Circuit noted that we had previously found enforceable a similar provision, which limited the purchaser's remedy to the refund of its deposit and recovery of all out-of-pocket damages. *Id.* (citing *Ament v. One Las Olas, Ltd.*, 898 So. 2d 147, 150 (Fla. 4th DCA 2005)).

5

*Inlet Beach* supports a conclusion here that the seller's reimbursement of the buyer's inspection costs was a reasonable limitation on damages. *See also Ament*, 898 So. 2d at 150; *Jet Sales of Stuart, LLC v. Jet Connection Travel, GmbH*, No. 06-80039-CIV, 2006 WL 8435439 (S.D. Fla. Sept. 19, 2006).

### iii. Conclusion

The circuit court erred in finding contract section 10.4(b) was illusory and granting partial summary judgment for the buyer. As a result, we reverse that order and remand with directions for the circuit court to vacate the partial summary judgment for the buyer and enter summary judgment for the seller, which summary judgment orders the seller to: (1) pay the buyer's inspection costs as contract section 10.4(b) required; and (2) refund the buyer's deposit as the seller had directed.

*Reversed and remanded with directions on the seller's appeal; affirmed on the buyer's cross-appeal.*

KUNTZ, C.J., GERBER and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely-filed motion for rehearing.**

6