573 So.2d 142 (1991)
SEASIDE COMMUNITY DEVELOPMENT CORPORATION, Appellant,
v.
William Walter EDWARDS and Wife, Collette Mary Edwards, Appellees.
No. 89-3275.
District Court of Appeal of Florida, First District.
January 10, 1991.
*143 James E. Moore and Alice H. Murray of Moore, Kessler & Moore, Niceville, for appellant.
Michael Wm. Mead, Fort Walton Beach, for appellees.
*144 JOANOS, Judge.
This is an appeal from a non-final order awarding damages for breach of contract. Appellant Seaside Community Development Corporation contends the trial court erred with respect to the following points: (1) in finding that plaintiffs/appellees substantially complied with all of the conditions of the contract; (2) in determining that defendant/appellant breached the contract; and (3) in awarding damages, plus costs and attorney's fees to plaintiffs/appellees. We affirm.
On October 27, 1986, the Edwardses and Seaside Community Development Corporation (Seaside) executed a contract, which obligated the Edwardses to purchase a special lot (the Ruskin Place), for the sum of $30,000. The Edwardses paid a $1,000 deposit. At the time, the Edwardses were also involved in the purchase of another parcel of realty (a beachfront lot).
An addendum to the contract set forth the following contingencies:
This contract is contingent upon the following:
1) Buyer and Seller agreeing upon the design and designer of the structure to be built on this property AND on "Parcel 8-A & 8-B" ...
2) Buyer obtaining a financing commitment satisfactory to Buyer on BOTH "Parcel 8-a and b" AND on this transaction  ... on/or before February 28, 1987. Buyer agrees to use diligence and good faith in obtaining said commitments.
Upon removal of aforementioned contingency, Buyer agrees to place an additional deposit of $2,000.00 into the escrow account of Seaside Community Realty, Inc., and close according to the terms and conditions as set forth in this agreement.
If Buyer is unable to remove aforementioned contingencies, Buyer may declare this contract null and void and receive a full refund of deposit.
CLOSING: Shall be on/or before 15 days after removal of contingency # 2 above. REMOVAL OF THESE CONTINGENCIES SHALL BE AUTOMATIC if Buyer does not contact (IN WRITING) Seaside Community Realty, Inc. prior to (1) November 30, 1986, (2) February 28, 1987 to remove said contingency. Therefore, no notice received from Buyer shall remove these contingencies in full with all other provisions of this contract in full force and effect.
Section X of the contract provided, in part, that "Plans and specifications must be provided by Buyer, must conform to the Seaside Code, and must be approved by Robert S. Davis/Seaside Community Development Corp."
The record in this case reflects that Mr. and Mrs. Edwards attempted to schedule a meeting with Mr. Davis on November 30, 1986, but due to his commitments, the meeting did not take place until December 21, 1986. The initial design submitted by Mr. and Mrs. Edwards at the December 1986 meeting was rejected by Mr. Davis, as were each of the Edwardses' subsequent attempts to obtain design approval.
On January 3, 1987, the Edwardses notified Seaside that they were ready to close on the Ruskin Place lot. On January 13, 1987, Seaside responded by letter, advising the Edwardses that their purchase of a beachfront lot got "top billing" at that time, and that contract details on the Ruskin Place lot could be worked out later. The Edwardses acquiesced to Seaside's request to concentrate on the other lot. In this same time frame, Mr. Davis told the Edwardses that due to lender difficulties, he was not in a position to close on the Ruskin Place lot at that time. It is undisputed that the Edwardses did not pay the additional $2,000 deposit referenced in the addendum to the contract.
In August 1987, Seaside transmitted a written request to the Edwardses to sign a new contract. In a subsequent letter dated August 29, 1987, the Edwardses were advised that Seaside was "now able to proceed with Ruskin Place Artists Colony." The letter from Seaside further stated:
As part of its approval, the lender has required that all the prior purchase and sale contracts be written on the approved form. Also, to make sure that you fully *145 agree with our changes to Ruskin Place and are fully aware of its use restrictions and character, we also will require that you sign this new amended agreement. We are enclosing the new Ruskin Place purchase and sale agreement, which we need signed and returned to us by September 12, 1987 to assume the continuing validity of your contract at the agreed sale price.
The Edwardses declined to sign the new contract, believing it contained substantial changes from the terms and conditions contained in the original contract. The Edwardses still wished to close on the property, but under the original contract.
In February 1988, after the Edwardses again sought to close on the property, they received a letter from Seaside, enclosing a check in the amount of $1,000 as a refund of their earnest money deposit. The Edwardses refused to accept the attempted return of the earnest money deposit. After learning that the Ruskin Place property had been sold to another, the Edwardses filed suit for breach of contract, seeking a return of the $1,000 deposit, damages equal to the difference between the contract price and the fair market value of the property, attorney's fees and costs. Following a non-jury trial, the trial court awarded the Edwardses $12,000, plus attorney's fees.
Seaside first excepts to the trial court's determination that the Edwardses substantially complied with the conditions of the contract. Specifically, Seaside contends that the Edwardses failed to substantially comply with the following contingencies: (1) obtaining Seaside's approval of a building design, (2) depositing the additional $2,000 into Seaside's escrow account, and (3) failing to close on or before fifteen days after removal of contingency # 2 of the contract.
A contingency or condition precedent contemplates the performance of some act or the happening of some event after a contract is entered into, upon which the obligation to perform the contract is made dependent. Cohen v. Rothman, 127 So.2d 143, 147 (Fla. 3d DCA 1961). When the happening of a condition precedent is an element of a contract, no recovery can be had with regard to performance of the contract absent substantial compliance with the condition precedent. Cohen v. Rothman, 127 So.2d at 147; 11 Fla.Jur.2d Contracts § 139 (1979). On the other hand,
(1) Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach.
(2) Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.
Therefore, the nonbreaching party is relieved of its duty to tender performance and has an immediate cause of action against the nonbreaching party.
Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181, 182 (Fla. 1982), quoting Restatement (Second) of Contracts § 253 (1979); Blue Lakes Apartments, Ltd. v. George Gowing, Inc., 464 So.2d 705, 708 (Fla. 4th DCA 1985). One to whom a duty is owed based upon a condition precedent cannot profit from anticipatory repudiation of a contract which he himself was unable to perform. Although performance of the conditions precedent is excused, the party claiming recovery based on breach must demonstrate the ability to perform. Hospital Mortgage Group v. First Prudential Dev. Corp., 411 So.2d at 182; Blue Lakes Apartments v. George Gowing, Inc., 464 So.2d at 708.
The first condition precedent at issue in this case required the Edwardses to obtain design approval from Seaside. The record reflects that the Edwardses attempted to submit their proposed design to Mr. Davis on or before November 30, 1986, the first date specified in the contract addendum, but were unable to do so due to Davis's schedule. At the instance of Davis, the Edwardses continued to design and to redesign during a period when it is apparent that Seaside did not have a coherent *146 design plan in place. Since Seaside did not have a standard upon which to evaluate the design proposals submitted by the Edwardses, the trial court could reasonably conclude that their repeated attempts to comply equated to substantial performance of the design contingency.
The second condition precedent or contingency required the Edwardses to obtain a financing commitment on or before February 28, 1987, and upon obtaining same to place an additional $2,000 deposit into Seaside's escrow account. The record reflects that as of January 3, 1987, the Edwardses were prepared to effect a cash purchase of the Ruskin Place lot. When they notified Seaside of their readiness to close, Seaside advised that the Edwardses' proposed purchase of the beachfront lot would get priority at that time. Further, Mr. Davis acknowledged to the Edwardses that due to difficulties with its lender, Seaside was unable to close on the Ruskin Place property at that time. It is undisputed that the Edwardses did not place the additional $2,000 deposit into Seaside's escrow account. However, it is also undisputed that the Edwards were prepared to close on a cash basis within the time specified in the contract, but Seaside was unable to close at that time. In view of the Edwardses' announced readiness to effect a timely cash closing and Seaside's admitted inability to close, it was within the trial court's discretion to conclude that Seaside waived its right to require the additional escrow account deposit. Similarly, the failure to close on or before fifteen days after removal of the financing contingency was attributable solely to Seaside. Therefore, the trial court could reasonably conclude that Seaside waived the "time is of the essence" provisions of the contract, and that the Edwardses substantially complied with the closing contingency. See Coppola Enterprises, Inc. v. Alfone, 531 So.2d 334, 335 (Fla. 1988).
As its second point on appeal, Seaside contends the record is devoid of evidence to support the trial court's finding that Seaside failed to comply with the terms of the sales contract, and that Seaside failed to close on the transaction. We disagree. At the outset, we note that as a reviewing court, we must disregard conflicting evidence and accept the facts in evidence which are most favorable to the party that prevailed at trial. See Spurrier v. United Bank, 359 So.2d 908 (Fla. 1st DCA 1978); Blue Lakes Apartments v. George Gowing, Inc., 464 So.2d at 708-709. The record reflects that the closing was delayed beyond the date specified in the contract because Seaside would not or could not close timely. Prior to the later proposed closing, at the instance of its lender, Seaside tendered a new contract considered by the Edwardses to be more restrictive than the original contract. When the Edwardses refused to sign the new agreement, Seaside repudiated the contract by returning the $1,000 deposit. These facts constitute competent substantial evidence to support the trial court's determination that Seaside failed to substantially comply with the terms of the contract, and breached the contract.
As its third point on appeal, Seaside contends the trial court's award of $12,000 to the Edwardses contravened the remedies for default expressly provided in the contract. The subject contract provided that in the event of the seller's default, the buyer could bring an action for specific performance or refund of the earnest money deposit. In this vein, Seaside urges that the Edwardses filed suit after the one year limitations period for specific performance of a contract.[1]See § 95.11(5)(a), Fla. Stat. (1989). Therefore, according to Seaside, the only remedy to which the Edwardses *147 were contractually entitled was a return of the $1,000 earnest money deposit. Conversely, the Edwardses urge that the return of the earnest money deposit was not a remedy, and that Seaside ought not to be allowed to profit by its sale of the Ruskin Place property to another.
Generally, where the parties to a contract have agreed upon a remedy in the event of a breach, their agreement will control, provided the remedy is "mutual, unequivocal and reasonable." Hatcher v. Panama City Nursing Center, Inc., 461 So.2d 288, 290 (Fla. 1st DCA 1985); Design Time v. Monco of Orlando, Inc., 518 So.2d 454, 456 (Fla. 5th DCA), review denied, 525 So.2d 879 (Fla. 1988). In addition, if the contract provides for liquidated damages of a deposit, normally the court may not award damages in excess of that sum. Design Time v. Monco, 518 So.2d at 456; Brusko v. Circle of Seminole, Inc., 436 So.2d 399 (Fla. 2d DCA 1983). Nevertheless, the remedies provided by the parties are susceptible to scrutiny by the courts, to determine whether they are, in fact, mutual and reasonable. See, e.g., Ocean Dunes of Hutchinson v. Colangelo, 463 So.2d 437, 440 (Fla. 4th DCA 1985). Although the parties can stipulate to different kinds of remedies, "both parties must have genuine, not illusory, obligations." Id.
In the instant case, the trial court ruled that Seaside breached the contract in February 1988, when it returned the $1,000 earnest money deposit. Without the Edwardses' knowledge, Seaside sold the property to another in May 1988. In Coppola Enterprises, Inc. v. Alfone, 531 So.2d 334 (Fla. 1988), quoting Gassner v. Lockett, 101 So.2d 33, 34 (Fla. 1958), and based on a fact scenario very similar to this case, the court concluded, "where a vendor is unable to perform a prior contract for the sale of lands because of a subsequent sale of the same land, he should be held, to the extent of any profit in the subsequent sale, to be a trustee for the prior vendee and accountable to such vendee for any profit."
The continuing course of conduct between the parties to this action supports the trial court's determination that the contract was breached by Seaside in February 1988. Up until that time, the parties continued to negotiate in an effort to effect a closing. Seaside's sale of the property to another in May 1988 effectively deprived the Edwardses of specific performance as a remedy, by severely limiting the time period within which such an action could have been pursued. The Edwardses' sole remedy, the return of the $1,000 earnest money deposit, was neither mutual nor reasonable, within the contemplation of Coppola Enterprises, Inc. v. Alfone. In the circumstances of this case, the trial court's award of damages to the Edwardses was an appropriate remedy.
Accordingly, the trial court's order awarding damages for breach of contract is affirmed.
SHIVERS, C.J., concurs.
ZEHMER, J., dissents with opinion.
ZEHMER, Judge (dissenting).
I would reverse the appealed order. The Edwardses never tendered payment of the $2,000 deposit required as a condition precedent to the closing of the transaction. I cannot agree that the facts recited in the majority opinion are legally sufficient to establish waiver of this requirement by Seaside. The Edwardses' failure to timely tender this deposit, irrespective of any ongoing dispute regarding design, entitled Seaside to treat the contract as materially breached by the Edwardses; and absent a showing that Seaside had prevented the Edwardses from making the deposit, a showing not made on this record, Seaside was authorized by the express terms of the contract to declare the contract terminated and return the $1,000 deposit. The Edwardses should not be allowed to withhold the $2,000 deposit, which was admittedly due, and at the same time insist upon strict performance of the contract by Seaside. Such a result lacks the mutuality of obligation generally held to be essential to the enforcement of contracts.
NOTES
[1] According to Seaside, the limitations period began to run when Seaside refused to close within the time specified in the contract, or no later than March 15, 1987. Under Seaside's reasoning, the Edwardses could have filed an action for specific performance of the contract no later than March 14, 1988. The Edwardses maintain that the limitations period began to run in February 1988. Their contention is predicated on the trial court's ruling that Seaside breached the contract in February 1988, when it attempted to return the Edwardses' earnest money deposit.