898 So.2d 147 (2005)
Michael AMENT, Appellant,
v.
ONE LAS OLAS, LTD., a Florida limited partnership, Appellee.
No. 4D04-1108.
District Court of Appeal of Florida, Fourth District.
March 9, 2005.
*148 Brian C. Deuschle and Christopher D. Hale, Fort Lauderdale, for appellant.
Robert L. Jennings of Jennings & Valancy, P.A., Fort Lauderdale, for appellee.
MAY, J.
This case serves as a reminder that we do not live in an age of civility. The plaintiff appeals an adverse final judgment on his claim for breach of a pre-construction purchase agreement for a luxury condominium. He raises three issues. Two issues are evidentiary in nature; the third issue concerns the trial court's application of the implied covenant of good faith and fair dealing. The seller cross-appeals the trial court's ruling on the proper measure of damages. Although we disagree with the trial court's reasoning, we affirm the judgment in favor of the seller.
The purchaser entered into a purchase agreement for a luxury condominium. The agreement required a series of deposits to be made as the construction progressed. He paid the first two installments, but the seller rejected the third installment, terminated the agreement, and refunded the buyer's deposits. It subsequently sold the condominium unit to another party for a price approximately $200,000 higher than the original purchase price.
The purchaser sued the seller for breach of the purchase agreement. He sought damages to recover the loss of the property's appreciation. The seller defended on the ground the purchaser had breached the implied covenant of good faith and fair dealing. Specifically, it claimed the purchaser's conduct had become so abusive and threatening to the staff in the sales office, and his use of profanity so pervasive, the seller could no longer conduct business with him.
At trial and over the purchaser's objection, the seller called witnesses to testify regarding the purchaser's conduct leading up to the termination of the purchase agreement. The purchaser also called witnesses that testified the purchaser's conduct was not abusive. Each side presented witnesses concerning the current market value of the property.
The trial court entered the following written findings:

*149 [p]laintiff's conduct was, by any reasonable measure, beyond insufferable. Credible witnesses testified regarding Ament's grossly abusive, profane, and obnoxious conduct between May 2001, and October 2001. . . . [H]is belligerence caused an emergency staff meeting where plans were discussed for installing security cameras and an evacuation when Ament entered the business grounds. . . .
Based upon these findings, the trial court concluded the purchaser's behavior was "outrageous and intolerable," and the seller "terminated the contract for legitimate and non-monetary reasons." While acknowledging its departure from precedent, the court concluded the purchaser breached the implied covenant of good faith and fair dealing by his misconduct, thereby authorizing the seller to terminate the agreement.[1]
The trial court then discussed the proper measure of damages. "The appropriate award of damages is the resulting profit (the sale price less purchase price of unit no. 3006, plus accrued interest)." The court specifically found that paragraph 15 of the agreement did not limit the plaintiff to "out-of-pocket" damages.
We disagree with the trial court's conclusions on both the application of the implied covenant of good faith and fair dealing and the proper measure of damages. Nevertheless, we affirm the judgment in favor of the seller.[2]

Implied Covenant of Good Faith and Fair Dealing
Despite the trial court's laudable goal of prohibiting conduct of the type evident in this transaction, its application of the implied covenant of good faith and fair dealing is not supported by the law. Neither a claim nor a defense may be based only upon rudeness. See Spillers v. Five Points Guar. Bank, 335 So.2d 851 (Fla. 1st DCA 1976) (quoting 74 AM.JUR. 2d, Torts § 32 (1974)). "[A] duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. 4th DCA 1998); see also Ins. Concepts and Design, Inc. v. Healthplan Servs., Inc., 785 So.2d 1232 (Fla. 4th DCA 2001).
In the present case, the seller neither pled nor proved the purchaser's objectionable conduct related to the performance of an express term of the purchase agreement. We must therefore disagree with the trial court's application of the implied covenant of good faith and fair dealing to the facts of this case, and hold the seller's defense is invalid as a matter of law. Without a valid defense, the seller's termination of the purchase agreement rendered it the party in breach. However, this does not preclude us from affirming the trial court's judgment in favor of the seller.

*150 Measure of Damages

The trial court made two findings with regard to damages. First, the court found the damages for wrongful breach of the purchase agreement would include the "resulting profit . . . plus accrued interest. . . ." Second, the court found that the purchase agreement's provision concerning damages in the event of the seller's default did not limit the purchaser's damages to "out-of-pocket" expenses. We disagree.
Long-standing precedent establishes a proper measure of damages in breach of contract cases involving real estate. See Gassner v. Lockett, 101 So.2d 33 (Fla.1958).
Every rule of logic and justice would seem to indicate that where a vendor is unable to perform a prior contract for the sale of lands because of a subsequent sale of the same land, he should be held, to the extent of any profit in the subsequent sale, to be a trustee for the prior vendee and accountable to such vendee for any profit.
Id. at 34. This rule of damages discourages breaches in contracts for the sale of real property by preventing the seller from profiting by the resale of the same property at a higher price. Coppola Enter., Inc. v. Alfone, 531 So.2d 334 (Fla.1988).
The First District Court of Appeal addressed this issue in Seaside Community Development Corp. v. Edwards, 573 So.2d 142 (Fla. 1st DCA 1991). In Seaside, the purchasers entered into a contract to purchase two parcels of property. The seller became dissatisfied with the purchasers' failure to meet a deposit deadline. The seller returned the purchasers' deposit monies, which they rejected. The seller then sold the property to another buyer.
The purchasers sued the seller for the difference between the purchase price and the fair market value of the property. In discussing the proper measure of damages, the first district acknowledged the parties' ability to agree upon a remedy in the event of a breach. However, the court held the contractual provision limiting recovery to a return of the deposit in Seaside did not provide a mutual or reasonable remedy under the facts of the case. Id. at 147.
In this case, paragraph 15 of the purchase agreement specifies the remedy available to the purchaser in the event of the seller's default. It states:

Default by Seller. If Seller refuses to perform this Agreement and Seller has not cured the purported default within fifteen (15) days after Buyer sends written notice therefore to Seller, then Seller will be in "default." If at the time of such Seller's default, the Unit has not reached Substantial Completion,[3] then Buyer, as Buyer's sole remedy, may terminate this Agreement, receive a refund of the Deposits actually paid under this Agreement, and shall have the right to recover from Seller all actual, out-of-pocket damages incurred by Buyer with respect hereto, provided, however, that Buyer shall have no right to obtain special, consequential or punitive damages whatsoever from Seller, and Buyer hereby waives the same. . . .
We hold that paragraph 15 prevents the purchaser from recovering damages beyond the return of his deposit. In this case, not only were damages limited, but the purchaser expressly waived his right to collect more than that specified in paragraph 15. Such a waiver must be enforced.
*151 In reaching this decision, we continue to adhere to the general rule concerning the measure of damages for a seller's breach when it resells the property to another for a profit. See Gassner, Coppola, and Seaside. We find these cases distinguishable from this case. They did not involve the same clear, unequivocal waiver of damages beyond the deposit return that exists in this case. Parties may contractually limit damages for breach. See Seaside, 573 So.2d at 147. And, unlike Seaside, the buyer in this case did not have the right of specific performance because the seller's breach occurred prior to substantial completion of the unit.[4]
For these reasons, we reverse that part of the order concerning the proper measure of damages, which allows us to affirm the judgment in favor of the seller.
AFFIRMED.
KLEIN and GROSS, JJ., concur.
NOTES
[1] In a footnote, the trial court stated:

The facts in this action go far beyond mere foul language or coarse manners. Rather, they encompass conduct that also includes a consistent pattern of unacceptable behavior, and a gross departure from that which can be reasonably tolerated in a business relationship. Contrary to plaintiff's view, no court should be so blindly obedient to precedent that it would permit persistent abuse.
[2] According to the "tipsy coachman" doctrine, this court may affirm the judgment if it is legally correct, regardless of the trial court's reasoning. See State Farm Fire & Cas. Co. v. Levine, 837 So.2d 363, 365 (Fla.2002).
[3] Neither party disputes the unit had not reached substantial completion. The purchaser also agrees he suffered no out-of-pocket expenses.
[4] Paragraph 15 also provides: If at the time of such Seller's default, the Unit has reached Substantial Completion, then Buyer, as Buyer's sole remedy, may either terminate this Agreement and receive a refund of the Deposits actually paid under this Agreement or pursue the remedy of specific performance of this Agreement by Seller.