GROSS, J.
If a seller breaches a real estate sales contract, does the law require the buyer to file a lis pendens to protect the remedy of specific performance against the seller? We hold that the filing of a lis pendens is a tactical decision of the buyer alone. Without such a filing, the buyer may pursue a timely filed specific performance action; if the seller frustrates the remedy by selling the property to another, the buyer may *1063 recover the profits the seller realized from the sale.
We state the facts in the light most favorable to the buyer, the party who lost the summary judgment below.[1] See, e.g., Byrd v. BT Foods, 948 So.2d 921, 923 (Fla. 4th DCA 2007). On June 23, 2003, Jan Krzynowek, as seller, and Tzvi Schachter, as buyer, entered into a contract for the sale and purchase of real property for $800,000 (the “Contract”). Schachter paid a $30,000 deposit on June 24, 2003. Article 32 of the Contract provided in pertinent part:
32. DEFAULT: If either party defaults, the rights of the non-defaulting party and the Broker(s) shall be as provided herein and such rights shall be deemed to be the sole and exclusive rights in such event.
32.1 BUYER DEFAULT: If Buyer fails to perform any of the covenants of this Contract, all money paid or to be paid as deposits by Buyer pursuant to this Contract shall be retained by or for the account of Seller.
32.2 SELLER DEFAULT: If Seller fails to perform any of the covenants of this Contract, all money paid or deposited by Buyer pursuant to this Contract shall be returned to Buyer upon demand, or Buyer shall have the right of specific performance.
(Emphasis added).
On July 20, 2003 the seller entered into a “backup” agreement to sell the same property to a third party for $895,000.
On August 6, 2003, the seller’s attorney wrote the buyer and terminated the Contract. However, paragraph 4 of the Contract provided that the closing occur on or before August 10, 2003.
Between August 6, 2003 and August 26, 2003, notwithstanding the seller’s termination letter, the buyer’s agents proceeded with the expectation of closing on the property. During that time, the buyer’s title agent spoke with the buyer’s attorney and became aware “that the seller may be walking.” The title agent informed the buyer of this turn of events.
On August 26, 2003, the buyer’s attorney wrote to the seller’s attorney stating: (1) that it appeared that the seller was acting in bad faith to “get out of his contract ... so that he can sell the subject property to a third party for a higher price;” (2) that the buyer was “ready, willing, and able” to close, but the seller was preventing the closing from taking place, and (3) that if the seller continued to frustrate the closing, the buyer would “exercise his right to seek specific performance.”
The buyer and seller did not correspond further after August 26. A closing never occurred. The buyer’s attorney did not file a lis pendens against the property.[2]
The seller sold the property to another for $895,000 on September 30, 2003.
On October 13, 2003, the buyer filed a two count complaint for breach of contract and, alternatively, for specific performance. The seller sought damages of $95,000 plus $1,205 for costs incurred in anticipation of closing.
Shortly before trial, the circuit court granted the seller’s motion for summary judgment and entered judgment in favor of the seller. As to the specific performance count, the court reasoned that (1) the buyer knew that the seller was attempting *1064 to sell to a third party, (2) the buyer never filed a lis pendens, (3) had a lis pendens been filed, the seller could not have sold the property, and (4) because the property had been sold, the buyer could not receive specific performance. As to the breach of contract count, the court ruled that paragraph 32.2 of the contract was a valid limitation of remedies clause that allowed the buyer to seek specific performance or a return of the deposit, but not damages for breach of contract.
Under the Contract, the buyer’s remedy upon the seller’s default was either a return of deposit or specific performance. Section 95.11(5), Florida Statutes (2003), allowed the buyer one year from the time the cause of action accrued within which to bring an action for specific performance. This short statute of limitations serves a public policy that “encourage[s] the alienability of real property” by requiring a buyer with the right to specific performance to file a lawsuit within one year. Rybovich Boat Works v. Atkins, 585 So.2d 270, 271 (Fla.1991).
The seller’s September 30, 2003 sale of the property deprived the buyer of specific performance as a remedy. See Seaside Cmty. Dev. Corp. v. Edwards, 573 So.2d 142, 147 (Fla. 1st DCA 1991); Krantz v. Donner, 285 So.2d 699, 700 (Fla. 4th DCA 1973). Under these circumstances, the supreme court has ruled that “ ‘where a vendor is unable to perform a prior contract for the sale of the lands because of a subsequent sale of the same land, he should be held, to the extent of any profit in the subsequent sale, to be a trustee for the prior vendee and accountable to such vendee for any profit.’ ” Coppola Enters., Inc. v. Alfone, 531 So.2d 334, 335 (Fla.1988) (quoting Gassner v. Lockett, 101 So.2d 33, 34 (Fla.1958)); see Seaside Cmty. Dev., 573 So.2d at 147.
We reject the contention that the law placed an obligation on the buyer to file a lis pendens to prevent the seller from transferring the property to another and thereby frustrating the buyer’s remedy. The purpose of a notice of lis pendens is not to notify a seller in breach; its purpose is “ ‘to alert creditors, prospective purchasers and others to the fact that the title to a particular piece of real property is involved in litigation.’ ” S & T Builders v. Globe Props., Inc., 944 So.2d 302, 303, n. 1 (Fla.2006) (quoting Am. Legion Cmty. Club v. Diamond, 561 So.2d 268, 269 n. 2 (Fla.1990)). Here, the buyer makes no claim against the subsequent purchaser of the property.
Had the buyer filed a lis pen-dens, the court might have required it to post a bond. See S & T Builders, 944 So.2d at 304-05. An aggrieved buyer has the option of avoiding such potential costs by not filing a lis pendens. Instead, the buyer can press forward with a timely filed specific performance action and rely on the rule of Coppola Enterprises to force the seller in breach to disgorge any profits from a subsequent sale.[3] A seller in breach does not have the power to deprive the buyer “of specific performance as a remedy, by severely limiting the time period within which such an action could have been pursued.” Seaside Cmty. Dev., 573 So.2d at 147. It follows that a buyer victimized by a seller’s breach does not have the legal duty to take steps blocking a sale of the property to protect the remedy of specific performance. It is the seller in breach who bears the risk of having to *1065 disgorge profits realized from a subsequent sale.
The court confronted a similar issue in West Pinal Family Health Center, Inc. v. McBryde, 162 Ariz. 546, 785 P.2d 66 (1989). That case involved a seller’s breach of a contract for the sale of real property. Id. at 67. Even though he knew of the buyer’s claim under the contract, the seller sold the property to a third party. The buyer filed suit, seeking the “alternative remedies of specific performance and damages.” Id. at 68. In the context of deciding a privilege claim on a trial court discovery ruling, the West Pinal court had to determine if it was material to the case that the buyer had failed to file a notice of lis pendens. The seller argued that the failure to file a lis pendens was relevant to the issue of the buyer’s failure to mitigate damages. The court held that the buyer’s decision not to file a notice of lis pendens was not material to the lawsuit. Id. at 70.
The West Pinal court’s reasoning is applicable to this case. The court noted that as it applied to the buyer’s action for specific performance, “the decision not to file a lis pendens was merely a tactical one,” that was not “evidence of a failure to mitigate damages.” Id. at 69. The court rejected the argument made here — that had a lis pendens been filed, “the sale of the property to the third party could have been blocked.” Id. The court reasoned that if the buyer “was obligated to attempt to block the sale as a result of [the seller’s] alleged wrongdoing, then breaching parties would be entitled to choose the remedies the injured party may pursue.” Id. at 70. The court concluded that it was the buyer, and not the seller in breach, who had the choice of remedies. Id.
Having concluded that the buyer did not lose the right to pursue specific performance by failing to file a lis pendens, we also hold that the limitation of remedies in paragraph 32.2 does not bar the cause of action, which seeks recovery on the rule of Coppola Enterprises. Although paragraph 32.2 limited the buyer to a return of his deposit or specific performance, the seller’s conduct deprived the buyer of the specific performance remedy. The policy behind Coppola Enterprises is that “[a] seller will not be permitted to profit from his breach of a contract with a buyer, even absent proof of fraud or bad faith, when the breach is followed by a sale of the land to a subsequent purchaser.” 531 So.2d at 335-36. This policy trumps the application of the limitation of remedies clause; the award of damages in this case is part and parcel of the specific performance remedy. This holding is in accord with that of Seaside Cmty. Dev., 573 So.2d at 147. There, the first district held that a clause limiting a buyer to specific performance or refund of deposit did not preclude recovery of damages where the seller’s sale of the property to another deprived the buyer of specific performance.
For these reasons, we reverse the summary final judgment and remand to the circuit court for further proceedings.
SHAHOOD and TAYLOR, JJ., concur.

. For the purpose of this opinion, we assume that the seller was in breach of contract. We recognize that, upon remand, the issue of the seller’s breach may be a contested issue.

. The buyer’s appellate counsel did not represent the seller at this point in the case.

. Of course in a falling market, there will be a sale below the original contract price or no sale at all. In this case, the buyer will either get specific performance or be happy with a return of a deposit from the seller in breach.