[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10380

_____

D.C. Docket No. 1:14-cv-01418-TWT

THE CADLE COMPANY II, INC.,

Plaintiff - Counter Defendant
Appellant,

versus

KENNETH MENCHION,
PADRICA MENCHION,
THE BEST SERVICE CO. INC.,

Defendants - Cross Claimants -
Counter Claimants - Appellees,

PRIME ASSET FUND V, LLC,

Defendant - Cross Defendant -
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 14, 2020)

Before MARTIN, JILL PRYOR, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

The Cadle Company II, Inc. [hereinafter "Plaintiff"] purchased a portfolio of loan accounts from defendant Prime Asset Fund V, LLC.  The "Unsecured Loan Sale Agreement" consummating the sale included a long list of loan accounts included in the portfolio.  One of these accounts was a home-equity line-of-credit account for defendants Kenneth and Padrica Menchion, who had executed a note in the principal amount of $200,000.  Prime Asset, however, had already assigned the Menchion account to defendant The Best Service Co., Inc., for collection prior to its sale to Plaintiff.  Pursuant to the agreement with Prime Asset, Best Service subsequently sued the Menchions in state court on their note and settled with them for $150,000.  As provided for by the Collection Agreement between the two companies, Best Service kept $60,000 of the money collected in payment for its services and remitted the remaining $90,000 to Prime Asset.

Plaintiff filed this suit against the Menchions, Best Service, and Prime Asset.  Plaintiff and defendants Best Service and the Menchions filed motions

2

for summary judgment; defendant Prime Asset did not file a motion for summary judgment. The district court denied Plaintiff's motions for summary judgment, but granted summary judgment for Best Service and the Menchions. Given the absence of a motion for summary judgment by Prime Asset, Plaintiff's claims against Prime Asset remained pending.

Seeking an interlocutory appeal of the court's summary judgment order in favor of Best Service and the Menchions, Plaintiff requested that the district court certify this order as final under Federal Rule of Civil Procedure 54(b). The district court granted Plaintiff's motion, and this appeal followed. After careful review, and with the benefit of oral argument, we affirm the district court's grant of summary judgment to the Menchions and Best Service.

## I.    BACKGROUND

### A.    Events Predating the Present Litigation

Having established a home-equity line-of-credit account, the Menchions borrowed $200,000. The original lender assigned the account to defendant Prime Asset. The Menchions later defaulted.

On August 17, 2011, Prime Asset entered into a "Collection Agreement" with defendant Best Service. The Collection Agreement defined the terms between Best Service and Prime Asset for "any and all accounts" assigned to Best Service for collection, including how the proceeds of any collection efforts would

3

be divided.  Under this agreement, Best Service would receive 40% of collected proceeds for accounts requiring legal action and 30% for accounts not requiring legal action.  Paragraph 7 of the Collection Agreement states that Prime Asset "agrees to leave all assigned loans and/or accounts in the hands of Best [Service] for a period of at least [120 days] from the date of assignment.  After which time and upon [Prime Asset's] request, said loans and/or accounts will be returned without cost, and free from litigation on Best's part . . . . [except] (b) If legal action has been initiated on an account, it shall remain with Best until said legal action and/or judgment is barred for further enforcement by the applicable statute of limitations or is otherwise resolved."

On November 29, 2012, in preparation for Best Service's litigation against the Menchions, Prime Asset's Operations Manager Karen Cooksey executed an affidavit stating that "on or about November 15, 2011, [Prime Asset] the owner of [the Menchion Account], assigned all of its interests and all its rights thereunder, including the right to file suit and collect on this account, to The Best Service Co., Inc."  That same day, Cooksey executed an "Assignment for Collection" stating that "the [Menchion] account, including principal and accruing interest, is owned by [Prime Asset] and was assigned to [Best Service] for collection, on the agreed rate of commission, with full authority to collect and/or sue upon same on November 15, 2011."

A few weeks later, on December 21, 2012, Defendant Prime Asset and Plaintiff Cadle Company entered into an "Unsecured Loan Sale Agreement" pursuant to which Prime Asset sold a portfolio of accounts to Plaintiff. The total unpaid principal balance of the loans included in the portfolio was $26,485,346. Plaintiff paid $100,999.22 for the portfolio, which represented .0038134 of the over $26-million principal balance on the underlying loans. Despite Prime Asset's prior assignment of the Menchion account to Best Service for collection, the Menchion account was listed in the 14-page Exhibit to the Loan Sale Agreement as one of the numerous accounts sold to Plaintiff.

Section 6 of the Loan Sale Agreement includes a number of representations and warranties concerning Prime Asset's ability to convey unencumbered to Plaintiff this portfolio of accounts. As it relates to this case, Prime Asset represented in Section 6.2 that it had "full right and authority to sell, assign and transfer" all accounts, including the Menchion account, to Plaintiff. Prime Asset also represented that "[n]o person or entity holds any competing claim of an interest" in the Menchion account. Prime Asset further represented that it was "sole owner" of the Menchion account, that it was "free and clear of any lien, encumbrance or security interest whatsoever," and that it was not the "subject of a pending or threatened Claim, including but not limited to a Claim by a servicing

5

agent or attorney for [Prime Asset] <u>under a collection or contingency</u>

<u>arrangement</u>."  (emphasis added)

As to the remedy available to Plaintiff for Prime Asset's sale of an account

to which it did not have unencumbered rights, Section 6.3 of the Loan Sale

Agreement states that a repurchase of that loan by Prime Asset is the "Sole

Remedy for Breach of Representations and Warranties":

> It is expressly understood that the Seller's representations and warranties are made as of the Closing Date.  If on any date between the Closing Date and April 30, 2013, the Buyer discovers that Seller breached an representation or warranty set forth in this Agreement, the Buyer shall give written notice to Seller within ten (10) calendar days of the discovery of such breach, and the Seller shall have the right to cure such breach during a period of sixty (60) calendar days after receipt of such notice.  If such breach or failure is not duly cured with such sixty (60) day period, or not otherwise waived or consented to in writing by Buyer, then Seller shall repurchase the subject Unsecured Loans at the Repurchase Price.  <u>The remedies set forth in this Section 6.3 shall be the exclusive remedies of the Buyer for any breach by Seller of a representation or warranty, and the Buyer shall not be entitled to any other rights, remedies or other relief, at law or in equity</u>.

(emphasis added)

In short, per the terms of this provision, Plaintiff's only remedy for a breach

of Prime Asset's warranty that it had an unencumbered right to sell the Menchion

account was to have Prime Asset repurchase that account.  As prescribed by the

agreement, the repurchase price for the Menchion account would be $762.68 (i.e.

the loan amount of $200,000 times the Purchase Price basis points of .0038134 as

defined on page 2 of the Loan Sale Agreement).

6

Plaintiff contacted Best Service on or about January 23, 2013 and advised the company that Plaintiff had purchased a pool of loans from Prime Asset that included the Menchion account. Upon inquiry by Best Service, Prime Asset explained to Best Service that it had inadvertently included the Menchion account in the Loan Sale Agreement with Plaintiff, that the account was not properly assigned to Plaintiff, and that it was subject to the Section 6.3 repurchase provision.

Relying on its Collection Agreement with Prime Asset and on the latter's representations, Best Service filed its planned state court legal action to collect on the Menchion account on February 7, 2013. Shortly thereafter, on March 22, Plaintiff also filed a lawsuit against the Menchions to collect on this same account, but Plaintiff dismissed the action on May 6, 2013 after learning that Best Service had already filed its own lawsuit. Plaintiff never attempted to intervene in Best Service's lawsuit nor did it try to stop Best Service's collection efforts.

On April 11, 2013, the state court entered a default judgment against the Menchions in the lawsuit filed by Best Service in the amount of $273,748.75, which included the principal, accrued interest, fees, and costs. On June 26, the Menchions settled with Best Service, paying $150,000 in full satisfaction of the default judgment. With legal action having been taken, Best Service retained 40%

7

of the proceeds ($60,000) pursuant to the terms of the Collection Agreement, and it remitted to Prime Asset the remainder ($90,000).

## B.    Procedural History of Present Litigation

On April 22, 2014, Plaintiff filed this case in the State Court of Henry County, Georgia, seeking to undo the Menchions' settlement of their debt on the underlying note and to recover the $150,000 collected on the Menchion account by Best Service.  Best Service removed the case to the United States District Court for the Northern District of Georgia on the basis of diversity jurisdiction.[1]

As to the Menchions, Plaintiff sought payment of the entirety of their original note, notwithstanding the fact that the state court had issued a judgment and that the Menchions had settled any obligation they owed under that note.  To that end, Plaintiff filed two claims against the Menchions:  one claim seeking full payment of the original note and a second claim asking the district court to set aside the state court judgment pursuant to which the Menchions had paid Best Service $150,000 in settlement of that judgment. Plaintiff sued Best Service for tortious interference, arguing that by inducing the Menchions to settle their obligation on the note, Best Service had induced them to breach their contractual obligations to Plaintiff.  Plaintiff sued both

---

[1]  We have twice remanded to the district court the question whether the parties were completely diverse, which is necessary to satisfy the requirements for diversity jurisdiction.  Following the second remand, the parties engaged in the necessary discovery and demonstrated to the district court that there was complete diversity.  We are likewise satisfied that complete diversity exists.

Best Service and Prime Asset for "money had and received," alleging that these two entities should remit to Plaintiff all money they received from the Menchions in settlement of the note. Plaintiff further claimed that Prime Asset had breached its contract with Plaintiff.

Plaintiff filed a motion asking the district court to grant it summary judgment on some of its claims, including its claim on the note against the Menchions, its claim for money had and received against Best Service and Prime Asset, its breach of contract claim against Prime Asset, and its claim to set aside the state court judgment. The Menchions and Best Service filed a joint motion seeking summary judgment as to all claims made against them. The district court granted summary judgment in favor of Best Service and the Menchions as to all of Plaintiff's claims against them; it denied Plaintiff's motion for summary judgment. Defendant Prime Asset did not file a motion for summary judgment.

As to the Menchions, the court concluded that they were protected by the doctrine of res judicata, as the state court judgment resolved the claims against them based on their default on the home-equity loan note. As to the claim for tortious interference against defendant Best Service, the court concluded that Plaintiff had failed to satisfy the elements of such a claim. As to Plaintiff's breach of contract claim against defendant Prime Asset, the court agreed that, because Prime Asset had assigned this account to Best Service prior to the sale of its

9

portfolio to Plaintiff, Prime Asset had breached its warranty that the Menchions' account was unencumbered. Nevertheless, the court noted, the contract provided that the remedy for such a breach was the repurchase of the account by Prime Asset at the contractual purchase price of $762.68. Given that ruling, Plaintiff's claim against Prime Asset and Best Service "for money had and received"—that is, a claim requesting that these two defendants remit to Plaintiff the money that they collected from the Menchions—likewise failed. The court noted that this claim required Plaintiff to prove that the defendants have money to which Plaintiff is entitled and which the defendants should not, in good conscience, be entitled to keep. Those elements were not satisfied here because, given its prior assignment of that account to Best Service, Section 6 of the agreement required only that Prime Asset repurchase the Menchion account from Plaintiff. Further, Best Service's agreement with Prime Asset when the latter assigned the Menchion account to Best Service expressly allowed the latter to retain $60,000 of the money it had collected.

Because Plaintiff's claims against Prime Asset remained pending—as the latter had not filed a motion for summary judgment—there was no final judgment from which Plaintiff could appeal. Nevertheless, wishing to appeal the district court's grant of summary judgment to Best Service and the Menchions, Plaintiff sought to file an interlocutory appeal as to these rulings. To accomplish this,

Plaintiff filed a motion asking the district court to enter an order, pursuant to Federal Rule of Civil Procedure 54(b), rendering as final the court's grant of summary judgment to the Menchions and Best Service.  The district court granted Plaintiff's motion and entered final judgment for Best Service and the Menchions on Plaintiff's claims against these two defendants.  Plaintiff timely appealed, and we now consider its appeal of the district court's grant of summary judgment to Best Service and the Menchions.

## II.    DISCUSSION

### A.    Plaintiff's Claim for Money Had and Received against Best Service

"We review a summary judgment ruling *de novo,* viewing the materials presented and drawing all factual inferences in a light most favorable to the non-moving party."  *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 931 (11th Cir. 2013) (quotation marks omitted).

The parties confirmed at oral argument that no claims remain pending against the Menchions.  Accordingly, we affirm the district court's judgment dismissing all claims against the Menchions.  Plaintiff also abandoned appeal of the following claims:  (1) tortious interference against Best Service, (2) punitive damages against Best Service, and (3) the claim to set aside the judgment rendered by the state court on Best Services' suit against the Menchions.

11

This means that the only claim from Plaintiff's interlocutory appeal that remains to be reviewed is Plaintiff's claim against Best Service for money had and received. In the Loan Sale Agreement, Prime Asset had represented and warranted that it had "full right and authority to sell, assign and transfer the Unsecured Loans to" Plaintiff. More particularly, Prime Asset represented that no loan within the portfolio was "the subject of a pending or threatened claim," including a claim by "a servicing agent" "under a collection . . . arrangement." As Prime Asset concedes, this was an untrue statement as to the Menchion account because prior to selling the portfolio to Plaintiff, Prime Asset had "assigned all of its interests and all its rights thereunder, including the right to file suit and collect on this account" to Best Service. And just a few weeks before closing on the sale of the portfolio with Plaintiff, Prime Asset had formally executed an "Assignment for Collection" in Best Service's favor, confirming that the latter had full authority to collect on the Menchion account and/or to sue. As noted, Prime Asset and Best Service further entered into a Collection Agreement setting out Best Service's rights, including compensation, under the agreement.

As Prime Asset and Best Service argued before the district court, the Loan Sale Agreement between Prime Asset and Plaintiff provides for the exclusive remedy when such a breach occurs. Section 6.3 states that Plaintiff's sole remedy when Prime Asset makes incorrect representations concerning its rights to a

particular account is for Prime Asset to repurchase the particular account.  Plaintiff rejected Prime Asset's offer to repurchase, instead arguing to the district court that the Loan Sale Agreement's limitation of remedies provision is unreasonable and therefore should not be enforced.  The district court rejected that argument, as do we.

"In Georgia, a claim for money had and received is quasi contractual." *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1126 n.20 (11th Cir. 2010).  "It 'is comprised of the following elements:  a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused.'"  *Id.*, quoting *Fernandez v. WebSingularity, Inc.,* 299 Ga. App. 11 (2009) (internal quotations and citations omitted).  "More generally, [a]n action for money had and received, although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity.  Such a claim exists only where there is no actual legal contract governing the issue."  *Id.* (internal quotations and citations omitted).

Here, the Loan Sale Agreement governs Plaintiff's right to collect on the Menchion account based on Prime Asset's breach of its warranty that it held an unencumbered interest in the account.  In particular, Section 6.3 of the Loan Sale Agreement defines the remedy available to Plaintiff for Prime Asset's failure to

convey an unencumbered interest in the Menchion account as represented and warranted by Prime Asset in Section 6.  As it did before the district court, Plaintiff argues on appeal that the remedy-limitation provision is unenforceable under Florida law, which controls pursuant to Section 10.10 of the Loan Sale Agreement.

Under Florida law, "[p]arties may contractually limit damages for breach." *Inlet Beach Capital Investments, LLC v. F.D.I.C.*, 778 F.3d 904, 906–07 (11th Cir. 2014), quoting *Ament v. One Las Olas, Ltd.*, 898 So. 2d 147, 151 (Fla. Dist. Ct. App. 2005).  "A remedies limiting provision is enforceable, unless it contains 'an unreasonable disparity in remedy alternatives available to' the parties."  *Id.*, quoting *Terraces of Boca Assocs. v. Gladstein,* 543 So. 2d 1303, 1304 (Fla. Dist. Ct. App. 1989).

The district court found the limitation of remedies provision reasonable because "[i]t has a time limit and is restricted to breaches of representations or warranties during that time period."  The court further found that it was "reasonable given the number of loans that are packaged and the potential for including one inadvertently, like what happened here."  We agree with the district court.

The remedy-limitation provision constitutes a reasonable allocation of a risk known to the parties when entering the Loan Sale Agreement.  Florida courts "assum[e] that the parties to a contract have allocated the economic risks of

14

nonperformance through the bargaining process." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 412 (Fla. 2013) (Canady, J., dissenting).

Here, the Loan Sale Agreement conveyed a large portfolio of loans and debtor accounts to Plaintiff. The $200,000 unpaid balance on the Menchion account represents only 0.94% of the total value of the loans conveyed in the Loan Sale Agreement. Moreover, Plaintiff negotiated a purchase price constituting a small fraction of the unpaid balance of the loans, only 0.38 percent. As part of the bargain, Plaintiff agreed to the remedy-limitation provision that anticipates potential problems with ownership and the encumbrance of some of the conveyed accounts, a phenomenon that the parties obviously foresaw in a transaction in which numerous accounts are sold in bulk. The remedy-limitation provision is reasonable under those circumstances. Plaintiff cannot accept the extremely favorable loan purchase price here of less than a half a penny on the dollar and then disclaim the conditions underlying that price, like the repurchase remedy, as unreasonable. *See S. Fin. Grp., LLC v. McFarland State Bank*, 763 F.3d 735, 740 (7th Cir. 2014) (upholding remedy-limitation provision for non-monetary breach of loan sale agreement under Wisconsin law and finding "no reason to reject the parties' allocation of risk" where sophisticated buyer of loans paid 29 cents on the

15

dollar for the portfolio and "could have negotiated a different contract had it wanted to shift more risk to [seller]").

That the Loan Sale Agreement limits the repurchase remedy to breaches of representations and warranties under Sections 6.1 and 6.2 supports the reasonableness of the remedy-limitation provision.  The parties narrowly crafted the remedy-limitation provision to allocate a known risk that Prime Asset's representations and warranties with respect to some loans might not be satisfied, while preserving the parties' contractual remedies for breaches of other provisions. This narrowly tailored remedy-limitation provision is reasonable.  *See Inlet Beach*, 778 F.3d at 907–08 (upholding remedy provision limited to purchaser's obligations to consummate the purchase of residential property that did not implicate a breach by the purchaser of "<u>any other</u> of its obligations" under the contract) (emphasis in original).

We are unpersuaded by Plaintiff's reliance on *Ocean Dunes of Hutchinson Island Development Corporation v. Colangelo* and *Hackett v. J.R.L. Development, Inc.,* for the proposition that the remedy limiting provision is unreasonable because "[a] return of one's own money hardly constitutes damages in any meaningful sense." *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. Dist. Ct. App. 1985); *Hackett v. J.R.L. Dev., Inc.*, 566 So. 2d 601, 603 (Fla. Dist. Ct. App. 1990).  Each of those cases involved contracts for the sale

16

of condominiums where the court held that an exclusive remedy provision that provided for only the return of a buyer's deposit in the event of a seller's default lacked mutuality and was unreasonable where the seller could retain substantial liquidated damages if the buyer defaulted.  The condominium contracts in *Ocean Dunes* and *Hackett* permitted a sophisticated seller to cancel the entire sale without financial ramification, limiting the unsophisticated buyer's recovery to return of their deposit.  In contrast, the repurchase remedy in the Loan Sale Agreement here allocates a known risk between sophisticated parties that the representations and warranties in Section 6 may be inaccurate for some loans within a large portfolio, it is narrowly tailored to address that risk, and it does not limit damages for breach of other provisions of the Loan Sale Agreement.

We are similarly unpersuaded by Plaintiff's reliance on *Metropolitan Dade County v. Worsham Brothers Co., Inc.*, 563 So. 2d 1107 (Fla. Dist. Ct. App. 1990).  In Section 6.9 of the construction contract in *Worsham Brothers*, "the parties expressly agreed that upon termination of the agreement 'neither party shall have further liability to the other party.'"  *Id.* at 1108.  The court found this "limitations provision [] enforceable against Worsham unless the County was at fault for [Worsham's] nonperformance."  *Id.*  The court concluded that "[i]f on remand the County is found to have acted in good faith, section 6.9 of the Agreement shall apply equally to all parties."  *Id.*  *Worsham Brothers* does not, as Plaintiff

17

contends, stand for the proposition that the remedy limitation agreed to here by sophisticated parties is unenforceable. To the contrary, *Worsham Brothers* held the remedy limitation enforceable unless the County was faulted for the nonperformance because the County had an implied obligation not to hinder or obstruct defendant's performance of its contractual obligations. No such obstruction allegations exist here.

Accordingly, we find the remedy-limitation provision of Section 6.3 enforceable, meaning that the remedy for Prime Asset having assigned the Menchion loan to Best Service prior to conveying that account to Plaintiff is for Prime Asset to repurchase the account.[2]

### B.    Plaintiff's Claims against Prime Asset and Prime Asset's Motion to Dismiss It as a Party to this Appeal Based on Lack of Jurisdiction

Plaintiff requested that the district court enter a final judgment so that it could appeal the district court's grant of summary judgment to two defendants— the Menchions and Best Service. Yet, now Plaintiff also seeks to litigate on appeal

---

[2] Moreover, in making a "money had and received" claim, Plaintiff is proceeding under the equitable principle that a person should not be allowed to unjustly enrich himself at the expense of another. Here, Plaintiff was aware that Best Service had sued the Menchions on the underlying note. Nevertheless, it made no effort to intervene in that litigation or formally stake any claim; to the contrary, it dismissed its own legal action against the Menchions. Plaintiff then watched as Best Service expended time and resources to litigate and collect on the Menchion account, pursuing a claim only after Best Service's efforts had yielded dividends. Under these circumstances, Plaintiff's equitable argument—that considerations of equity and good conscience should allow it to wrest from Best Service the portion of the recovered proceeds allocated to Best Service by the Collection Agreement—is not a compelling argument.

18

the district court's <u>denial</u> of its motion for summary judgment against defendant

Prime Asset: a ruling from which the district court did not issue a final judgment

warranting an appeal. Prime Asset has filed a motion for us to dismiss Plaintiff's

appeal of the denial of its motion for summary judgment against Prime Asset,

arguing that we lack jurisdiction to hear the appeal. We grant the motion.

There are multiple reasons why the present appeal is not the appropriate

vehicle for this review. But first we set out the broad outline of Plaintiff's

appellate argument that the district court incorrectly denied its motion for summary

judgment on its claim against Prime Asset.

Plaintiff repeats its argument that Section 6 of the Loan Sale Agreement

between it and Prime Asset should not be enforced because that section is

unreasonable. As set out above, and like the district court, we have rejected that

argument. On appeal, however, Plaintiff introduces a new reason why summary

judgment should have been granted against Prime Asset. Plaintiff argues that even

accepting that Section 6 precludes any remedy other than repurchase of the

Menchion account based on the breach of warranty arising from Prime Asset's

prior assignment of that loan to Best Service, other sections of the Loan Sale

Agreement provide Plaintiff some relief. Specifically, Section 2.1(a) obligated

Prime Asset to "transfer and assign . . . <u>interest of any type or kind</u> <u>in the</u>

<u>Unsecured Loans</u>." (emphasis added) Article I defines "Unsecured Loans" as the

individual loans, "including all Claims and all Proceeds arising therefrom." (emphasis added)  Section 3.4(e), which addresses Prime Asset's "Post-Closing Obligations," states that "[a]ny and all payments received by Seller on and after the Closing Date, shall belong to Buyer and any such amounts received by Seller shall be promptly remitted to Buyer within ten (10) Business Days."  (emphasis added)

Putting all this together, we read Plaintiff to be arguing that even though Prime Asset's false representation to Plaintiff that the Menchion loan was not encumbered only gives rise to Prime Asset's duty to repay Plaintiff the purchase price of that loan account under Section 6, this limitation does not erase Prime Asset's duties under Sections 2.1(a)  and 3.4(e).  Further fleshing out what we perceive to be Plaintiff's argument, Section 2.1(a) required Prime Asset to transfer any interest it had in the loan at the time of closing.  Given its prior assignment of the loan to Best Service and the corresponding Collection Agreement, Prime Asset no longer had a 100% interest in that loan, but it still retained a 60% interest, based on the Collection Agreement's allocation of the proceeds of a collection by Best Service.  Stated another way, Prime Asset's breach of warranty only extended to the 40% of the loan proceeds that it had assigned to Best Service; Prime Asset still maintained a 60% interest in the loan that was not encumbered.  Adding Section 3.4(e) to the mix, the Loan Sale Agreement imposed post-closing obligations on Prime Asset, providing that " [a]ny and all payments received by" Prime Asset

20

after the Closing Date, belonged to Plaintiff and that Prime Asset was required to "promptly remit[]" these payment to Plaintiff.  Following its closing with Plaintiff, Prime Asset received $90,000 from Best Service's successful collection efforts, which represented 60% of the money that Best Service had collected.  As we read Plaintiff's argument, the above provisions of the contract require that Prime Asset remit that $90,000 to Plaintiff.

Certainly, this is not a frivolous argument by Plaintiff.  We cannot, however, consider it on this appeal for two reasons:  (1) we lack jurisdiction to consider Plaintiff's appeal of the district court's denial of its motion for summary judgment against Prime Asset on Plaintiff's claims for breach of contract and money had and received and (2) Plaintiff never raised this argument before the district court.  As to the absence of jurisdiction, Prime Asset did not move for summary judgment on those claims and the district court did not include them in its Rule 54(b) Final Judgment from which Plaintiff appeals.  Nor did Plaintiff request that the court include the denial of summary judgment against Prime Asset in that final judgment.  "By definition, entry of partial judgment under Rule 54(b) results in some claims in a case being immediately appealable while other claims remain pending in the district court." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 779 (11th Cir. 2007).  Moreover, "[i]t is well established that the denial of a motion for summary judgment is not a final decision under

21

28 U.S.C.A. § 1291." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983). "An order denying summary judgment amounts to a decision that the claim remains pending for trial and is therefore interlocutory." *Id.* Thus, we do not have jurisdiction to hear Plaintiff's claims against Prime Asset.

We decline Plaintiff's request that we exercise pendent jurisdiction over the district court's denial of summary judgment on Plaintiff's claims against Prime Asset. "Pendent appellate jurisdiction is present when a nonappealable decision is 'inextricably intertwined' with the appealable decision or when 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009), quoting *Swint v. Chambers Cty. Comm'n,* 514 U.S. 35, 51 (1995). "[T]he Supreme Court has signaled that pendent appellate jurisdiction should be present only under rare circumstances." *Id.*

No basis exists for exercising pendent jurisdiction over the district court's denial of Plaintiff's motion for summary judgment against Prime Asset. First, Plaintiff's claim on appeal that Prime Asset breached provisions of the Loan Sale Agreement other than Section 6 (i.e., Sections 2.1 and 3.4) is not inextricably intertwined with our decision interpreting Section 6 and determining that it is enforceable. The remedy-limitation provision in the latter does not apply to

22

alleged breaches of Sections 2 and 3; it only applies to breaches of the representations and warranties contained in Section 6.

Plaintiff could have easily waited until the pending claims against Prime Asset had been finally resolved and appealed the district court's entire judgment in one appeal. That it chose to jump the gun with a piecemeal appeal of only some rulings does not authorize us to consider an appeal of a ruling over which we have no appellate jurisdiction.

Even if we had jurisdiction to consider Plaintiff's attempted appeal of the district court's denial of Plaintiff's motion for summary judgment against Prime Asset, Plaintiff could not prevail because the arguments it now makes were never raised before the district court. Plaintiff did not argue before the district court that it was entitled to summary judgment based on Prime Asset's breach of any provision other than Section 6. Nor was the argument we have fleshed out above even hinted at in Plaintiff's litigation before the district court. "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted).

Yet fortunately for Plaintiff, the absence of jurisdiction to review the district court's denial of Plaintiff's motion for summary judgment as to Prime Asset means that we do not reject Plaintiff's appeal based on Plaintiff's failure to raise this new

23

issue before the district court. Plaintiff will live to fight another day against Prime Asset in the district court, at least as to any arguments not foreclosed by our ruling on Section 6.[3] Accordingly, we grant Prime Asset's motion to dismiss Plaintiff's appeal as to Prime Asset and we remand Plaintiff's claims against Prime Asset for the district court to resolve them.[4]

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's grant of summary judgment for Defendant The Best Service Co., Inc., and Defendants Kenneth and Padrica Menchion. We also **GRANT** Defendant Prime Asset Fund V, LLC's motion to dismiss it as a party to this appeal for lack of jurisdiction.

---

[3] The law of the case doctrine will bind the parties and the district court to our ruling finding enforceable the limitation-of-remedy provision of Section 6.3. *Alphamed, Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1285-86 (11th Cir. 2004).

[4] Our review of the district court docket indicates that on August 15, 2018, while this case was on appeal, the district court entered an order stating that "[a]ll claims except those addressed in the Court's Judgment of January 4, 2016 having been abandoned, the Clerk is directed to close this case administratively." We do not know the basis for this order, but note that the district court has not entered final judgment on Plaintiff's claims against Prime Asset, which claims were not addressed in the district court's order of January 4, 2016. We take no position on the viability of Plaintiff's remaining claims against Prime Asset following the district court's administrative closure order. Should the court determine that those claims have been abandoned or are otherwise without merit, it may enter a final judgment to that effect, from which judgment Plaintiff may seek to appeal. As it now stands though, Plaintiff's claims against Prime Asset remain pending in the district court.